GUIDRY, Judge.
Plaintiff, Nelda Jean Seal, instituted this suit against Waffle House Inc. her former employer for unpaid wages, penalties, and attorney’s fees under the provisions of LSA-R.S. 23:631 and 632.[1] After a trial on the merits judgment was rendered in favor of plaintiff and against the defendant, Marco’s, Inc. in the amount of $720.00, representing penalty wages of 90 days,[2] plus legal interest from the date of judicial demand. In addition the trial court awarded plaintiff attorney’s fees in the amount of $700.00. Defendant appeals. Plaintiff answers the appeal asking for an increase in the amount of penalties and attorney’s fees.
The pertinent facts of this case are as follows. Hired as a waitress by defendant on Friday, October 3,1975, plaintiff worked for defendant until Sunday, October 12, 1975 when her employment was terminated. Plaintiff, who worked eight hours a day, five days a week, was paid $1.00 per hour plus a guaranteed $1.00 per hour in tips. Plaintiff was employed in defendant’s Lees-ville restaurant operation.
After calling in sick on Saturday, October 11, 1975, plaintiff upon her return to work the next day was informed by a co-employee Gail Simmons Michiels, that she had been fired by the manager. The co-employee, Simmons, stated that she had been instructed to tell this to plaintiff by the manager, Bobby Toups, who was not there. Plaintiff testified that at this time she asked for her pay, but was told by Simmons to come in on Monday when she could talk with Mr. Toups. Gail Simmons testified that plaintiff did, on Sunday, October 12, ask for her check but since she was without authority asked plaintiff to return the next day. On the following day, Monday, October 13, 1975, plaintiff consulted an attorney to represent her in this matter. After consultation with the attorney, plaintiff went with a friend, Walter Williams to defendant’s restaurant. At the restaurant plaintiff returned her uniform and asked the manager, Bobby Toups for her check. Plaintiff testified that Toups told her she would have to come in on Thursday to get her check. Walter Williams corroborated plaintiff’s testimony in this regard. We observe that plaintiff, who had received one check from defendant in payment of her first day’s work, which day was the last day of a pay period, admitted she knew that defendant’s employees were paid on Thursday. The defendant’s employees pay period ended every Friday, payment for that period being made on the following Thursday.
On Tuesday, October 14, 1975 plaintiff again returned to the restaurant, this time with a girlfriend, Doris Orrie Gluege. The *751 testimony of both plaintiff and Ms. Gluege reflects that on this occasion plaintiff again demanded her check but was again told to come back on Thursday. Plaintiff did not return to pick up her check on Thursday, nor did she return to the restaurant at all until January of the following year. Plaintiff testified that she was specifically advised by her attorney not to return to defendant’s place of business to pick up her check on Thursday, October 16, 1975.
The manager, Bobby Toups, denied that plaintiff ever demanded her wages. He stated that had plaintiff asked to get paid he was in a position to make a withdrawal from petty cash and pay her the amount due in cash. Robert King, President of the defendant corporation, testified that it is company policy, upon discharge of any employee, to ask them if they will wait until the end of the week’s pay period for their check, otherwise, if payment is demanded the restaurant manager is authorized to make a cash disbursement from petty cash. All the checks issued by the defendant in payment of wages are prepared in defendant’s home office in Lake Charles. The checks are thereafter sent to various outlets for delivery to the employees.
Introduced in evidence as Plaintiff’s Exhibit 2 is a check issued by defendant to plaintiff in the amount of $40.29. The check is dated October 14, 1975, and represents the amount owing and due the plaintiff as of the date of her discharge on October 12, 1975. Plaintiff testified that she had never seen nor received this check or payment of any kind from the defendant. The record reflects that plaintiff’s check was received on Thursday, October 16, 1975 at defendant’s operation in Leesville. The check remained there unclaimed for a considerable period of time until it was finally deposited by defendant in its account.
Bobby Toups testified that after- receipt of the check he made several attempts to deliver the check to plaintiff by calling at the residence address given on her employment application but to no avail. Toups testimony in this regard although not corroborated is uncontradicted. Toups lived on Herring Street in Leesville, just down the street from the address given by plaintiff on her employment application and W-4 form. Plaintiff stated that the address furnished on her employment application and W-4 form was incorrect, since she had moved just after starting work with defendant. Plaintiff admitted that she never supplied defendant with her correct address. However plaintiff stated she notified the Post Office of the change, and in that connection said she was receiving mail at her new residence which had been addressed to her former residence. Plaintiff had no telephone.
Plaintiff admitted that she was informed that her check was available at defendant’s restaurant about two weeks after the Thursday payday. She received the information from a friend, Doris Gluege. Gail Michiels testified that she informed the plaintiff on Saturday, October 18,1975, that her check was waiting for her. Plaintiff denied this, stating that she was not so informed by Gail Michiels until two months after her discharge.
There is no dispute over the amount of wages owed by defendant to plaintiff or that this sum is due to her. Question remains however, as to whether the defendant under the circumstances of this case breached the duty imposed upon it under LSA-R.S. 23:631 and if so the amount due plaintiff for penalties and attorney’s fees. LSA-R.S. 23:631 and 632 read as follows:
LSA-R.S. 23:631:
“It shall be the duty of every person, employing laborers or other employees of any kind whatever when discharging any laborer or other employee, or when any such laborer or employee has resigned, within twenty-four hours after such discharge or resignation, to pay the laborer or employee the amount due under the terms of employment whether the employment is by the day, week or month, upon demand being made upon the employer by the discharged or resigned laborer or employee at the place where the employee or laborer is usually paid.”
LSA-R.S. 23:632:
*752 “Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety day’s wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorneys’ fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation. As amended Acts 1964, No. 422, § 1.”
We are of the opinion that the record clearly supports the trial court’s finding that plaintiff, upon termination of her employment on October 12, 1975 demanded payment of her wages on that day and on the following two days. The record also supports the trial court’s finding that the defendant did not then pay or tender payment as a result of plaintiff’s demand but instead requested plaintiff to return to the place of business on pay day, Thursday, October 16, 1975. This being considered there can be no question that defendant violated the provisions of LSA-R.S. 23:631 which requires it to pay a discharged employee within 24 hours after demand at the place where the discharged employee is usually paid. The sole remaining issue for determination is whether the trial court’s award of penalties and attorney’s fees, under LSA-R.S. 23:632 is correct.
The courts of this state, in interpreting the provisions of LSA-R.S. 23:632, have consistently held that due to the statutes penal nature it must be strictly construed. Accordingly, our courts have allowed the employer to interpose equitable defenses against a claim for penalties. Bielstein v. Hawkins, 50 So.2d 523 (La.App. 1st Cir. 1951). In Becker v. Choate, 204 So.2d 680, 683 (La.App. 3rd Cir. 1967), writs refused, 251 La. 751, 206 So.2d 96, this court defined these equitable defenses thusly:
“While cases on this point generally state that R.S. 23:632 is subject to ‘equitable defenses’, we are of the opinion that the word ‘defenses’ does not mean a ‘defense’ in the strict sense of the word. Rather, the tenor of these cases seems to indicate that the court will refuse to assess penalties and attorney’s fees where the facts of the particular case strongly indicate that greater justice will be attained by such refusal. These facts then become equitable considerations, or ‘defenses’ in a loose sense of the word, which will move the court to deny the penalties.”
Clearly then resolution of the issue of penalties and attorney’s fees must depend on whether an examination of the facts shows any equitable justification for the employer’s failure to pay the wages demanded.
As stated hereinabove the facts show there was no dispute over the amount of wages due and owing to plaintiff; that plaintiff demanded her wages immediately upon discharge, and for several days thereafter; and that defendant continually informed plaintiff that she would receive her check on pay day. Defendant did not offer plaintiff an immediate cash payment.
Further review of the evidence clearly establishes that the defendant acted in good faith and did not arbitrarily refuse or deliberately delay the payments to plaintiff, and in fact obtained plaintiff’s check as soon as practicable in the normal course of its business. However, we agree with the findings of the trial court that defendant’s action in this regard, which were in contravention of its own policy to make cash payments to discharged employees who demand their wages, cannot excuse defendant for its lack of diligence in effecting the immediate delivery to plaintiff of her wage check, or in making an immediate cash payment as per company policy. To hold otherwise would be to allow a company payroll policy to supersede the positive provisions of the statute. Hendrix v. Delta Air Lines, Inc., 234 So.2d 93 (La.App. 4th Cir. 1970), writs *753 refused, 256 La. 364, 236 So.2d 498 (1970); Young v. White Stores, Inc., 269 So.2d 266 (La.App. 3rd Cir. 1972).
We conclude that plaintiff is entitled to penalty wages pursuant to the provisions of LSA-R.S. 23:632.
The trial court in awarding penalties to the plaintiff found that since no payment or tender was made by defendant the plaintiff was entitled to receive the maximum amount recoverable, i. e., ninety days wages at the employee’s daily rate of pay.[3] We do not agree with the trial court’s determination as to the period for which these penalties are due.
In considering the amount to be awarded plaintiff in penalties we note that the trial court correctly found that there was a failure on the part of plaintiff to take positive action to secure her wages, although she knew, some two weeks after her discharge that her check was available at defendant’s place of business. The evidence bears this out. Plaintiff was informed by defendant that payment of her wages would be received from the home office on Thursday, four days following her discharge and demand. Plaintiff admitted that she was aware that Thursday was pay day, yet after her original demand she did not return those few days later to pick up her check. The evidence showed that the check was received at defendant’s business and there remained for several weeks, unclaimed. Plaintiff stated that following her discharge on Sunday she consulted an attorney on Monday morning, who told her not to pick up the check on Thursday. Plaintiff conceded that her repeated demands on Monday and Tuesday were simply to establish proof in this matter. She was well aware that her check would not be in until Thursday, and was never led to believe otherwise.
We find that the record clearly contradicts the trial court’s conclusion that defendant made no real effort to see that plaintiff was tendered the wages due her. Plaintiff admitted never having furnished defendant with her correct address. The evidence in this regard shows that defendant’s manager, immediately following receipt of the check, made several unsuccessful attempts to deliver plaintiff’s check to the address given on her employment application. Plaintiff had no telephone. Plaintiff admitted that about two weeks following the Thursday pay day she was informed by a friend that her check could be picked up at defendant’s place of business. Plaintiff did not return to defendant’s place of business to secure her wages. Although plaintiff consulted her attorney the day after her discharge, no demand was ever made by the attorney upon defendant until the institution of these proceedings some three months after plaintiff’s discharge.
Considering the foregoing we find that the evidence establishes a calculated attempt on the part of plaintiff to avoid tender of the wages due her by the defendant. As previously set forth the defendant herein is liable under the provisions of LSA-R.S. 23:632 for ninety (90) days wages or alternatively for full wages from the time of the employee’s demand for pay until the employer shall pay or tender the amount of unpaid wages. We recognize that it is the employer’s duty and responsibility to pay or tender payment to a discharged employee. However, under the peculiar facts of this case, where the employer’s several attempts to tender the wages are unsuccessful because the employee gives incorrect information on an employment application, the defendant having no other information regarding her whereabouts, the employee is not entitled to maximum recoverable penalties under LSA-R.S. 23:632.
Our conclusion in this regard is not to be considered as a holding that a discharged employee must accept or refuse tender only at the employer’s business place in order to claim penalties, yet on the other hand, this *754 court cannot sanction actions by a discharged employee which the evidence shows to be a calculated attempt to frustrate and avoid tender of the wages due by the employer. We therefore determine that penalties accruing against the defendant should have ceased after plaintiff’s admitted receipt of the information that her check was at defendant’s establishment, plus we grant plaintiff a reasonable time thereafter in which to collect her pay. We will award plaintiff penalties accruing up to 3 weeks after her discharge and demand, or 15 work days, at $16.00 per day. Accordingly the judgment of the trial court will be amended so as to reduce the award of penalty wages from $720.00 to $240.00.
The judgment of the trial court inadvertently omits an award to plaintiff for the unpaid wages admittedly due her on her discharge and which she has never received. Accordingly, we amend the trial court judgment to include this amount.
The trial judge awarded plaintiff $700.00 as attorney’s fees. Since we determine that plaintiff is entitled to judgment for her unpaid wages and for 15 days penalty wages we conclude that an award of attorney’s fees was proper. Plaintiff has answered the appeal and contends that such award should be increased so as to compensate him for the additional legal work necessitated by this appeal. We have reviewed the record in this case and find the amount awarded by the trial court as attorney’s fees to be reasonable and sufficient to compensate plaintiff’s counsel for work on both the trial and appellate level.
For the above and foregoing reasons the judgment of the trial court is amended in the following particulars:
(a) judgment is rendered in favor of plaintiff, Nelda Jean Seal, and against , the • defendant, Waffle House, Inc.;
(b) the award to plaintiff is amended so as to include therein the amount of plaintiff’s unpaid wages, i. e., the sum of $40.29; and,
(c)the award of penalty wages to plaintiff is reduced from the sum of $720.00 to $240.00.
Except as amended the judgment of the trial court is affirmed. The costs incurred in this appeal are to be borne equally by the parties.
AMENDED AND AFFIRMED.

. Waffle House, Inc. is the owner and operator of the establishment known as “Marco’s Waffle House”, which name was subsequently changed to “Marco’s Pitt Grill”. Plaintiff’s suit originally incorrectly named her former employer as “Marco’s Inc.” however, this error was corrected by an amending petition. We note that the formal judgment signed in this matter cast Marco’s Inc., in judgment, riot the defendant, Waffle House, Inc..

. The trial court determined that plaintiff’s wages amounted to $8.00 per day.

. The trial court determined that plaintiffs daily wages amounted to $8.00 and made a total award of $720.00. We find the trial court’s conclusion as to plaintiff’s daily wage rate in error. The record clearly establishes and defendant admitted that plaintiff was employed at a guarantee of $16.00 per day.