LEMMON, Judge.
In this suit for unpaid wages which his employer allegedly failed to pay upon termination of his employment and for penalty wages under R.S. 23:632, plaintiff has appealed from the judgment which awarded his unpaid wages but limited penalty wages to two weeks.
Plaintiff, a grain sampler for defendant’s grain elevator inspection service, was terminated on January 2, 1976 and immediately requested payment from his supervisor at the place where he was usually paid. He made additional requests the following day *621 at two separate grain elevators and again two days later, but on each occasion was told the check wasn’t there. Defendant’s payroll clerk, unaware of the penalty statute and apparently not informed of plaintiff’s requests, simply followed standard payroll procedure in which the check for that pay period was printed out by computer on January 8, 1976 and mailed to plaintiff on January 9, 1976.[1]
Plaintiff denied receiving the check, although the envelope was never returned to defendant. Furthermore, plaintiff made no further demands nor inquiries about these wages, although he appeared at defendant’s business office about two weeks after his termination for the purpose of obtaining payroll information for an unemployment compensation application.
After 90 days plaintiff filed this suit, seeking his unpaid wages, as well as penalty wages for the entire statutory period.
The trial court found that defendant had mailed the check and limited penalty wages to two weeks, which was the time plaintiff appeared at the business office without mentioning that he had not yet received his unpaid wages.
R.S. 23:632 is a penal statute that must be strictly construed. Since the employer was tardy in responding to plaintiff’s demand for his wages, the penalty provisions of the statute are applicable. The key question is whether defendant’s mailing of the check constituted sufficient tender of the wages within the meaning of R.S. 23:631 so as to stop the running of penalty wages.[2]
Plaintiff had previously made a similar claim against a previous employer under almost identical circumstances, contending he had not received a check for the wages which had been mailed. And in litigation against another previous employer he contended he had not received a reprimand mailed to him. These circumstances cast doubt upon plaintiff’s assertion in this case that he did not receive the properly addressed check.
Furthermore, even if plaintiff did not receive the check for unpaid wages, penalty wages are not to be absolutely imposed irrespective of the surrounding circumstances. A court may appropriately consider equitable circumstances surrounding the non-receipt of payment of wages and the employer’s responsibility for non-receipt.
In this case defendant reasonably assumed that the check for the wages had been received, because it was unlikely that a terminated employee in financial need would initially demand his unpaid wages and then make no further request until the end of 90 days, especially when plaintiff had visited defendant’s business office to obtain information related to payroll wages without registering a complaint of non-receipt.[3]
Moreover, the trial court implicitly found that plaintiff consciously refused to notify defendant that the check for wages had not been received, especially by purposeful silence at the time of the visit to the business office. Although a claimant normally has no duty to make additional demands for unpaid wages after the demand which starts the running of the penalty period, the circumstances of this particular case dictate the plaintiff’s recovery of penalty wages should be limited to the period outlined by the trial court.
*622 Under the overall circumstances of this case we conclude it is inappropriate to impose penalty wages on an employer who acted in good faith at all times after the end of the two-week period for which penalty wages were assessed by the trial court.
The judgment is affirmed.
AFFIRMED.

.In the normal payroll procedure the computer printed the employee’s name and address on the check. A supervisor from each elevator generally picked up the checks and distributed them to the employees at the elevators (this was the method by which plaintiff received his checks), but some were mailed. When employees resigned or were terminated, the checks were routinely processed at the end of the pay period and mailed to the payroll address.

. The 1977 amendment to R.S. 23:631 and 632, in addition to changing the time period for tendering unpaid wages to “three days following the date of discharge or resignation”, specifically authorizes payment by mail.

. Plaintiff admitted he had “hoped that they would take as much time as possible, you see, because I was aware of these statutes”.