371 So.2d 1183 (1979)
Daniel E. LAZAUSKAS, Plaintiff and Appellant,
v.
LOUISIANA OFFSHORE CATERERS, INC., Defendant and Appellee.
No. 12586.
Court of Appeal of Louisiana, First Circuit.
April 16, 1979.
Writs Refused June 11, 1979.
*1184 Michael J. Samanie, Houma, for plaintiff and appellant.
Bruce A. North, New Orleans, for defendant and appellee.
Before CHIASSON, EDWARDS and SARTAIN, JJ.
EDWARDS, Judge.
Plaintiff, Daniel E. Lazauskas, brought this suit to recover from the defendant, Louisiana Offshore Caterers, Inc., the sum of $11.01 as wages allegedly due for three hours work, together with penalties and attorney's fees under LSA-R.S. 23:631 and 632. The trial court found that plaintiff failed to meet his burden of proving that wages were due and dismissed the suit. Plaintiff appealed.
Plaintiff was employed by defendant as a galley hand during November, 1977, and was assigned to an offshore rig. Plaintiff was paid $2.45 per hour for a forty-hour week and $3.67 per hour for overtime. Plaintiff worked on the rig from November 16, 1977, until November 23, 1977, when he left the rig and, thereafter, terminated his employment with defendant.
The present wage dispute centers on plaintiff's claim that he actually worked a total of 105 hours during this period although he was paid for only 102 hours. The discrepancy, amounting to three hours of overtime, is attributable to the hours worked on November 17, 1977, inasmuch as plaintiff reported 24 hours but was paid for 21 hours.
Plaintiff testified that when he arrived on the rig on November 16, 1977, the catering staff was at half strength (two workers as opposed to four) and that he was required by the supervisor on the rig, a toolpusher named Blackwell, to work double 12-hour shifts until additional personnel reached the rig. Additionally, plaintiff testified that he in fact worked 24 hours for the pay period of November 17, 1977. He stated that he was constantly at work during the entire 24-hour period except for a few short breaks, amounting to less than one hour, to shower, freshen up, eat, or get coffee. He testified, unequivocally, that he did not sleep during this time, and that he was required to, and did in fact, work the number of hours reported.
Defendant did not offer any evidence to contradict plaintiff's testimony that he had worked 24 hours on November 17, 1977. James Fontenot, defendant's director of *1185 personnel, testified that he did not know how many hours plaintiff had actually worked. However, Fontenot testified that he decided that plaintiff was only entitled to pay for 21 hours. He based this determination on his personal estimation of the time plaintiff would have spent attending to personal needs (hygiene, nutrition, et cetera) during a 24-hour work period. Fontenot stated that the estimate for these "breaks" was three hours, which time was subtracted from the hours reported by plaintiff.
Jack Ulery, defendant's other employee who was on the rig on November 16-17, 1977, substantiated plaintiff's claim that he was on duty for 24 hours. Ulery noted, without giving any time estimate, that plaintiff took breaks during this period, adding "even on a regular shift, you take breaks" (transcript, page 98).
We conclude, without recounting further the testimony in the record that plaintiff proved his claim for the disputed wages in this case and that the trial court erred in dismissing the suit. The evidence is overwhelmingly to the effect that plaintiff worked 24 hours on November 17, 1977. The only basis for reducing the number of hours is defendant's unsubstantiated estimate of the time taken on breaks.
On the issues of penalties and attorney's fees, LSA-R.S. 23:631 and 632 provide:
Section 631.
"A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
"B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.
"C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section."
Section 632.
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."
The penalty provision of the above statutes will not be applied if the employer had some equitable defense. Miletello v. Noble Drilling Corporation, 316 So.2d 505 (La.App. 2nd Cir. 1975); Martin v. Burns, 267 So.2d 913 (La.App. 1st Cir. 1972). Thus, where there is a bona fide dispute over the amount of wages due, the courts will not consider the failure to pay as an arbitrary refusal, and generally will refuse to award penalties. Otwell v. Howard Lumber & Supply Company, Inc., 283 So.2d 826 (La. App. 2nd Cir. 1973).
*1186 The record in the instant case demonstrates that there existed such a bona fide dispute concerning the time spent by plaintiff on breaks. We do not find any evidence to show that defendant was in bad faith or that it acted arbitrarily. We believe that the present facts do not warrant the imposition of penalties.
Attorney's fees, however, are not conditioned on the lack of good faith or the existence vel non of another equitable defense. Rather, they are awarded to the successful plaintiff in a well-founded suit. Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La.1978).
We believe that a reasonable fee, in view of the preparation required of counsel and the amount in dispute, is an attorney's fee in the sum of $250.
For the reasons assigned, the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff against the defendant in the sum of $11.01 plus attorney's fees of $250. Costs are assessed against the defendant.
REVERSED AND RENDERED.