374 So.2d 138 (1979)
Catherine SODAY
v.
MALL SNACKS, INC., d/b/a the Orange Bowl.
No. 12676.
Court of Appeal of Louisiana, First Circuit.
July 16, 1979.
*139 Charles R. Moore, Baton Rouge, for plaintiff-appellant.
Anthony J. Marabella, Jr., Baton Rouge, for defendant-appellee.
Before LANDRY, COVINGTON and PONDER, JJ.
COVINGTON, Judge.
Plaintiff, Catherine Soday, seeks regular wages, penalty wages and attorney's fees, under LSA-R.S. 23:631 et seq., for the failure of defendant, Mall Snacks, Inc., d/b/a The Orange Bowl, to pay her the final week's wages in the amount of $120.00 for a 6-day week, which was allegedly the wages due Mrs. Soday at the termination of her employment. The employer denied owing the wages, asserting that "the week immediately preceding the week that plaintiff quit her job, she was paid for one full week's salary, although she did not work that week. She was allegedly ill that week, and although not a policy or custom she was paid. Therefore, respondent felt that as a matter of equity she was not entitled to the week's pay she demanded." The employer further affirmatively pleaded that "there was a good faith dispute as to the wages owed" and asserted this dispute as an equitable defense.
From an adverse judgment, the plaintiff has appealed. We reverse.
The evidence shows that Catherine Soday was employed at defendant's place of business in Cortana Mall, Baton Rouge, Louisiana. She was paid $120.00 per week for a six-day week, or $20.00 per day. She *140 worked on Saturday, February 18, 1978, and did not show up for work on Monday, February 20, 1978. She had worked the entire week of February 12, but had only worked one day of the week of February 5 on account of illness. Mrs. Soday sent her daughter-in-law, Rita Saizan, on Friday, February 24, 1978, to pick up her wages. The manager of The Orange Bowl, Alice Hodges, gave her the check for the week of February 5. The manager refused to give her the check for the week of February 12 because Mrs. Soday had quit her employment without notice. The company had a policy of requiring one-week's notice before termination of employment.
Mrs. Soday went to the Labor Board seeking help to obtain the final week's wages. She was advised to seek legal advice, which she did. Then, apparently in response to the Labor Board's efforts, the employer sent Mrs. Soday a check for the final week's wages on April 17, 1978. Suit was filed in the instant case on April 18, 1978.
The pertinent statutory law is found in LSA-R.S. 23:631 and 632.
Section 631 reads:
"A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
"B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.
"C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section."
Section 632 reads:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."
The reason and spirit of the law requiring the employer at the time of the termination of employment to pay the employee the amount due under the terms of employment is "to compel an employer to pay promptly the earned wages of an employee after his discharge or resignation." Bannon v. Techeland Oil Corporation, 205 La. 689, 17 So.2d 921 (1944); Mason v. Norton, 360 So.2d 178 (La.1978); Robertson v. International Motor Company of Houma, Inc., 314 So.2d 531 (La.App. 1 Cir. 1975).
The fact that the employee quit her job abruptly without notice to the employer does not justify the employer's withholding payment of the employee's earned wages. It is well established that a company *141 policy can have no adverse effect on the requirement of prompt payment of earned wages upon termination of an employee, Duhon v. Prof. Erny's Music Company, Inc., 328 So.2d 788 (La.App. 3 Cir. 1976); Hendrix v. Delta Air Lines, Inc., 234 So.2d 93 (La.App. 4 Cir. 1970), writ refused, 256 La. 364, 236 So.2d 498 (1970).
A discharged or resigned employee can recover regular wages and penalty wages up to the date when the employer tendered payment. Recovery of same is allowed even if the regular wages initially sought were paid after demand but prior to suit. Sifers v. Exxon Corporation, 338 So.2d 763 (La.App. 4 Cir. 1976). It is only "a good-faith non-arbitrary defense to liability for unpaid wages, i. e., a reasonable basis for resisting liability" which will permit the courts to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La.1978).
We believe the evidence clearly establishes that the amount of the wages owed Mrs. Soday was not in dispute. There is no doubt that she would have been paid the two weeks' wages if she had continued her employment at The Orange Bowl. The fact that she suddenly quit work without notice can not affect her right to these earned wages. Under these circumstances it was arbitrary for the employer to withhold or delay payment of Mrs. Soday's earned wages. We thus find that Mrs. Soday is entitled to recover penalty wages from her employer in the amount of $20.00 per day from February 24 to April 17, 1978, a period of 44 days, or the sum of $880.00. Carey v. Orleans Insurance Company, 337 So.2d 317 (La.App. 4 Cir. 1976).
Reasonable attorneys' fees are to be awarded in the event of a well-founded suit for any unpaid wages whatsoever, even if penalty wages are not due. Carriere v. Pee Wee's Equipment Company, supra; Sifers v. Exxon Corporation, supra; Rubenstein Bros. v. LaForte, 320 So.2d 303 (La.App. 4 Cir. 1975); Robertson v. International Motor Company of Houma, Inc., supra.
Although the record does not disclose any evidence as to the value of attorneys' fees, it is apparent from an examination of the record that the attorney for the employee did work in connection with the case sufficient to entitle him to a fee of $500.00, which is to be taxed as costs to be paid by the employer. Carey v. Orleans Insurance Company, supra; Robertson v. International Motor Company of Houma, Inc., supra.
For the foregoing reasons, we reverse the judgment appealed, and award the plaintiff, Catherine Soday, the sum of $880.00, together with legal interest thereon from date of judicial demand until paid. It is further ordered that an attorney's fee in the amount of $500.00 be allowed, and that the same be taxed as costs. All costs in both courts are to be paid by the defendantappellee.
REVERSED AND RENDERED.