382 So.2d 988 (1980)
Henry E. PACE
v.
PARKER DRILLING COMPANY AND SUBSIDIARIES.
No. 13080.
Court of Appeal of Louisiana, First Circuit.
January 21, 1980.
*989 J. Donald Cascio, Denham Springs, for plaintiff.
Lee C. Kantrow, Baton Rouge, for defendant.
Before EDWARDS, LEAR and GREENE, JJ.
EDWARDS, Judge.
Henry E. Pace, plaintiff-appellee, filed suit against Parker Drilling Company[1] seeking penalty wages and attorney fees pursuant to LSA-R.S. 23:631 and 632.[2] From a judgment in favor of plaintiff awarding $1,177.60 in penalty wages and $1,500.00 in attorney fees, defendant appeals. We affirm as amended.
*990 While it is uncontested that Henry Pace was employed by Parker Drilling Company from January 8 through January 15, 1978, other relevant facts, subsequent to the plaintiff's discharge, are disputed.
Plaintiff testified that on January 16, 1978, he returned to the Parker Drilling Company rig where he had worked and demanded his final pay. This demand was made separately to both George Craig, who was in charge of keeping track of payroll hours, and to Don Lynch, the driller.
Timothy Wheat, another Parker employee discharged contemporaneously with the plaintiff, testified that he and Pace returned together on January 16, 1978, and demanded their wages from Don Lynch.
Sharon Pace, wife of the plaintiff, maintained that she too first sought payment on her husband's behalf on January 16, 1978, from George Craig. She further stated that she returned to see Mr. Craig on January 18, 19, 20, 24, 25 and every other day for a couple of weeks. On one particular day, January 20, Mrs. Pace made two visits to the rig. The first one bore fruit in that her husband's payroll check had arrived. Mrs. Pace took the check home but, on discovering it was made out in an insufficient amount, returned to Parker Drilling to inform Mr. Craig of the shortage.
George Craig denied seeing either the plaintiff or Timothy Wheat on January 16. He admitted that Mrs. Pace had initially sought payment for her husband but insisted that she had only returned once, a "few days" or "several days" or a "couple of days" after she had picked up the check first sent out by Parker Drilling, to point out an insufficiency in that paycheck. Craig conceded that he had inadvertently shorted Pace one day's pay and, on being notified by Mrs. Pace, had phoned in the additional hours to the company.
Harold Jennings, an administrative manager for the Parker Drilling division which included Louisiana, testified that plaintiff's hours were first called in on January 16, 1978, and that payroll checks were mailed out on the same day. Jennings first learned that the initial payment was inadequate "several days" after January 16. He immediately informed the Tulsa, Oklahoma, office from which checks were sent that Pace had been shorted. Jennings testified that, at most, it would have taken thirty minutes for a supplementary payroll check to have been issued, based on George Craig's word relayed to the Tulsa office by himself.
It is undisputed that Parker Drilling Company did not mail plaintiff's supplementary and final paycheck until February 7, 1978.
On October 11, 1978, plaintiff filed the suit which resulted in Parker Drilling Company's being cast in judgment and which is now on appeal.
Defendant-appellant specifies five grounds for appeal:
I. The trial court erred in not allowing defendant's equitable defense to R.S. 23:632.
II. Attorney fees were improper.
III. Attorney fees were excessive.
IV. The time period used in computing penalties was incorrect.
V. Discovery pertaining to the plaintiff's background should have been permitted.

I. EQUITABLE DEFENSE
R.S. 23:632 is a penal statute and therefore must be strictly construed. Equitable defenses are available and penalty wages are not to be absolutely imposed irrespective of the circumstances. Granderson v. New Orleans Board of Trade, 355 So.2d 620 (La.App. 4th Cir. 1978), application not considered 357 So.2d 1165 (La. 1978); Rubenstein Bros. v. LaForte, 320 So.2d 303 (La.App. 4th Cir. 1975); Otwell v. Howard Lumber & Supply Company, Inc., 283 So.2d 826 (La.App. 2d Cir. 1973), writ denied 286 So.2d 364 (La.1973).
Whether or not there is an equitable defense to penalty wages depends on the particular facts of each case. The jurisprudential fact situations vary too widely to permit strict classification. Nevertheless, certain *991 case groupings, however amorphous, do seem to exist.
Cases permitting equitable defenses include Lazauskas v. Louisiana Offshore Caterers, Inc., 371 So.2d 1183 (La.App. 1st Cir. 1979), writ denied 373 So.2d 510 (La.1979), a valid wage dispute; Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La. 1978); Colbert v. Mike-Baker Brick Company of New Iberia, Inc., 326 So.2d 900 (La.App. 3rd Cir. 1976), application not considered 329 So.2d 753 (La.1976), cases in which the defendant claimed offsets against wages past-due based on either damage allegedly caused by the plaintiff or property of the defendant allegedly being improperly retained by the plaintiff; Berteau v. Wiener Corporation, 362 So.2d 806 (La.App. 4th Cir. 1978), writ denied 365 So.2d 242 (La. 1978), a dispute over whether vacation pay was owed to an ex-employee; Seal v. Marco's, Inc., 343 So.2d 749 (La.App. 3rd Cir. 1977), where employer had employee's last check but couldn't mail it due to the employee's fault in giving an incorrect address.
Cases denying equitable defenses include Soday v. Mall Snacks, Inc., 374 So.2d 138 (La.App. 1st Cir. 1979), employer failed to pay last wages due to employee's quitting suddenly; Duhon v. Prof Erny's Music Company, Inc., 328 So.2d 788 (La.App. 3rd Cir. 1976), employer required employee to fill out separation from employment form prior to receiving terminal pay.
Basically, when there is a good-faith question of whether or not the employer actually owes past-due wages or whether there may be an offset to wages owed, resistance to payment will not trigger penalty wages. When the employer is arbitrary or sets out procedural pitfalls for the employee or is merely negligent in failing to pay past-due wages, penalty wages will be assessed. As the court stated in McCaskill v. Deviney Construction Company, 323 So.2d 178 (La.App. 3rd Cir. 1975), writ denied 325 So.2d 615 (La.1976):
"When the failure to pay wages due according to the statute is attributable to neglect or improper pay procedure of an employer, the equitable defense . . . is not available to an employer."
The present case is clearly one of employer negligence. Testimony convincingly established the fact of plaintiff's demand (which need be made only once). Defendant's employee, George Craig, admitted an error in payment, which information Harold Jennings conveyed to the defendant corporation on January 20, 1978. Yet, contrary to R.S. 23:631, Henry Pace was not paid in full until some 22 days after he was discharged. The penalty provisions of R.S. 23:632 were properly called into play.

II. AVAILABILITY OF ATTORNEY FEES
Parker Drilling urges that since all past-due wages were paid prior to suit being filed, plaintiff may not recover attorney fees. This position is incorrect as a matter of law. Sifers v. Exxon Corporation, 338 So.2d 763 (La.App. 4th Cir. 1976), specifically allowed attorney fees though suit was solely for penalty wages. Were it otherwise, an employer might initially refuse to pay terminal wages. Then, after the employee contacted an attorney, the employer could make payment. The result would be that the employee's final wages (often a small amount) would be used for attorney fees. Such a scenario would violate the basic principle of R.S. 23:631 and 632, that departed employees will be paid in full and swiftly. In the present case, attorney fees were proper.

III. AMOUNT OF ATTORNEY FEES
Appellant claims that the $1,500.00 award for attorney fees was "grossly excessive" and cites various cases as authority. We note that none of the cases cited is less than seven years old and that rampant inflation has taken its toll on the dollar in that time. Furthermore, we note that this case was strenuously defended both at trial and on appeal. Finally, we note that appellant failed to cite an older case permitting a similar award. In Simon v. Crowley Industries, Inc., 287 So.2d 549 (La.App. 3rd Cir. 1973), writ denied 290 So.2d 331 (La.1974), *992 attorney fees of $1,190.00 were awarded while the penalty wages were $1,152.00 and actual wages were only $38.00. Considering all circumstances, the award of $1,500.00 in the present case was within the discretion of the trial court and will not be disturbed.

IV. COMPUTATION OF PENALTIES
Both parties agree that because the defendant mailed plaintiff's final pay on February 7, 1978, penalty wages should not be awarded for that day. Therefore, the penalty wages are lowered by one day's salary, $51.20, and are fixed at $1,126.40.

V. DISCOVERY
The trial court sustained plaintiff's objections to certain interrogatories propounded by Parker Drilling and pertaining to plaintiff's background. Appellant maintains that those interrogatories were needed to impeach the plaintiff at trial. This claim has no merit and is an attempt to obfuscate the real issuewhether penalty wages and attorney fees are owed. Plaintiff's character is of no importance. Whether he made demand and whether he was paid were the only relevant questions. The trial court properly sustained plaintiff's objections to the challenged interrogatories.
For the foregoing reasons, the trial court judgment is affirmed except that the award for penalty wages is lowered from $1,177.60 to $1,126.40. All costs, both trial and appellate, are to be paid by Parker Drilling Company.
AFFIRMED AS AMENDED.
NOTES
[1] Suit was originally filed against Parker Drilling Company and Subsidiaries and the suit continued against that named defendant. However, answer was made, the suit was defended, and appeal has been taken by Parker Drilling Company. Despite no stipulation as to defendant's correct name, it is clear that Parker Drilling Company is the actual party defendant.
[2] R.S. 23:631 provides:

"A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section."
R.S. 23:632 provides:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."