415 So.2d 277 (1982)
Phillip James MAGEE
v.
ENGINEERED MECHANICAL SERVICES, INC., et al.
No. 14721.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Rehearing Denied June 23, 1982.
*278 John W. deGravellees, Baton Rouge, for plaintiff-appellee Phillip James Magee.
Bert K. Robinson, Eric A. Kracht, Baton Rouge, for defendants-appellants Engineered Mechanical Services, Inc. and The Metalock Corp.
Before LEAR, CARTER and CHIASSON, JJ.
CARTER, Judge.
Phillip James Magee filed suit against Engineered Mechanical Services, Inc. (EMS) and the Metalock Corporation for past due wages, penalty wages, and attorney fees pursuant to La.R.S. 23:631 and 632.[1] After suit was filed, EMS paid to Mr. Magee the past due wages. Suit was continued for penalty wages and attorney fees. The trial court awarded Mr. Magee penalty wages in the amount of $9,216.00 and attorney fees in the amount of $750.00. From this judgment, defendant appeals. We affirm.
Phillip Magee was employed by EMS from September of 1976 until his discharge on June 11, 1979, at which time he was working as a first-class machinist and earning $10.50 per hour. Some time prior to his discharge, Mr. Magee and all other personnel of EMS were issued identification badges and were asked to sign a "secrecy agreement and employment contract". It was understood that those employees who refused to sign the contracts would be summarily discharged. Mr. Magee refused to sign and was thus discharged.
The day after his discharge, Mr. Magee returned all tools that belonged to EMS. Mr. Magee testified that on the same day he also "threw" his identification badge in the tool room. When Mr. Magee returned the following day to collect his wages, EMS refused to give him a check until he returned the I.D. badge. A search was later made of the tool room, but the badge was never found, and its whereabouts is still unknown. Pursuant to legal advice, EMS then submitted to Mr. Magee an affidavit to be executed by him in which he was to explain what he had done with the badge. The affidavit also contained language by which Mr. Magee was to indemnify and hold harmless EMS from any damage arising out of the misuse by anyone of the I.D. badge. Mr. Magee refused to sign and sought legal help. A second affidavit was submitted to Mr. Magee seeking the same explanation concerning the whereabouts of the badge but omitting the "indemnity and hold harmless" clause. Instead, Mr. Magee was asked to acknowledge that he may be sued by EMS should damage result from misuse of the I.D. badge. He again refused to sign. Payment of the wages was conditioned on the completion and signing of the affidavits; therefore, since Mr. Magee did not sign, he was not paid.
It has often been stated by our courts that La.R.S. 23:632 is a penal statute *279 and must be strictly construed. Penalty wages are not to be absolutely imposed when the facts indicate there is an equitable defense. Rubenstein Bros. v. LaForte, 320 So.2d 303 (La.App. 4th Cir. 1975); Otwell v. Howard Lumber & Supply Company, Inc., 283 So.2d 826 (La.App.2d Cir. 1973), writ denied 286 So.2d 364 (La.1973); Pace v. Parker Drilling Company and Subsidiaries, 382 So.2d 988 (La.App. 1st Cir. 1980), writ denied 383 So.2d 1016 (La.1980).
The thrust of this appeal is that the trial court erred in not finding an equitable defense. Defendant urges that EMS had a right to withhold wages until Mr. Magee either returned its property or gave a sworn statement explaining what he had done with the property, and that this right was especially important because of the probability and magnitude of the harm which could result to EMS if the property fell into the hands of a competitor. This right, argues EMS, provides an equitable defense. (Defendant does not seriously argue that it had the right to demand indemnity from the plaintiff, and wisely so.)
There are no statutory provisions on what constitutes an equitable defense, so we must look to the jurisprudence and to the guidelines that have emerged from the wide variety of factual situations.
Courts are generally willing to find an equitable defense when there is a good faith dispute as to whether wages are actually owed. This situation may arise when, for instance, there is a question as to the number of hours worked, Lazauskas v. Louisiana Offshore Caterers, 371 So.2d 1183 (La.App. 1st Cir. 1979), writ denied 373 So.2d 510 (La.1979), or when the employee seeks offsets against wages based, for instance, on damage caused by the employee, Colbert v. Mike Baker Brick Co. of New Iberia, Inc., 326 So.2d 900 (La.App. 3d Cir. 1976), application not considered 329 So.2d 753 (La.1976), overruled in part on another point 364 So.2d at 556 (La.1978), or on advances made to the employee, Doucet v. Plantation Manor, Inc., 382 So.2d 984 (La. App. 1st Cir. 1980), or because property of the employer is allegedly being improperly retained by the employee, Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La.1978).
When wages are unquestionably due, however, and the employer refuses to make payment because the employee has not complied with some company policy or procedure, the courts have not found an equitable defense. Soday v. Mall Snacks, Inc., 374 So.2d 138 (La.App. 1st Cir. 1979); Duhon v. Prof Erny's Music Company, Inc., 328 So.2d 788 (La.App.3d Cir. 1976).
As the trial court noted, two cases relied on by defendant, Doucet and Lazauskas, do not fit the facts of the case sub judice. In those cases, the dispute was over whether the wages were actually due. Here, of course, the wages were undeniably due. A case discussed at length in appellants' brief is Clement v. Levenson, 236 So.2d 316 (La. App. 4th Cir. 1970). There, the trial court found that items belonging to the employer were not returned by the employee and the appellate court accepted this finding. The appellate court additionally found that one of the unreturned items, an index file, could cause economic harm to the employer if it fell into the hands of a competitor. The court found that the employer had an equitable defense for withholding the employee's wages. Defendant forcefully argues that the situation in the present case is identical. Here, however, the trial court did find that the identification badge was left with the employer, though not in accordance with the desired procedure. We feel that whether the badge was returned or not is not determinative in this case. In the Clement case, the property clearly belonged to the employer and had certain value to the employer. Here, there was no showing that the badge was considered to be the property of the employer or that it was of any value to the employer. It certainly had no intrinsic value. On this point, the demands of EMS seem frivolous.
The main concern of EMS was the security risk posed by the possible misuse of the badge. EMS engages in a highly competitive business. Some of its processes and techniques are not protected legally and *280 must be carefully guarded by secrecy in operations and by secrecy agreements. EMS employees work in many petrochemical and industrial plants locally, nationwide, and in some foreign countries. Apparently, the I.D. badge was made to be used to gain access to these plants without having to go through the process of getting a visitor's pass. EMS feared that a competitor might gain access to these plants through the use of the badge and not only discover its secret processes and techniques but also solicit business under the name of EMS. It feared, too, liability in case faulty work was done in its name.
Although we believe that these concerns were and are still held sincerely by EMS, we fail to see how an ordinary laminated I. D. badge, issued to a first-class machinist and bearing his picture, could be misused to bring about such adverse consequences. The testimony at trial simply did not show these concerns and fears to be reasonable. The trial court judge found that refusal to pay was over a "trifle", and we agree. EMS had no right to withhold payment because of the missing badge. It follows that EMS owed Mr. Magee an unconditional tender of wages.
Counsel for the defendant also urges the point that a good faith reliance on an attorney's advice may be an equitable defense. He has cited us no authority to support this point, however, and we know of none.
The employer in a well-founded suit for payment of wages is liable for attorney fees. La.R.S. 23:632. In addition to the fees already awarded, the plaintiff is entitled to an increase in the amount of $500.00 for work done on this appeal.
For the above and foregoing reasons, the judgment of the trial court is amended to increase the award of attorney fees to $1,250.00 and, as so amended, is affirmed at appellants' cost.
AMENDED AND AFFIRMED.
NOTES
[1] "A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by the official United States postmark or other official documentation from the United States Postal Service."

"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else the full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."