**John Joseph CROWLEY**

v.

**OLD RIVER TOWING CO., et al.**

Civ. A. No. 86–2514.

United States District Court,
E.D. Louisiana.

March 9, 1987.

Jesse M. Suit, III, Stempf, Dugar, LeBlanc, Papale & Ripp, Gretna, for plaintiff.

Charles N. Branton, Emmett, Cobb, Waits & Kessenich, New Orleans, La., for defendants.

## MEMORANDUM OPINION

MENTZ, District Judge.

Plaintiff, John Joseph Crowley, filed this lawsuit against Old River Towing Company (Old River Towing) and Marine Specialties Company (Marine Specialties) for penalty

wages pursuant to 46 U.S.C. § 10313. In his complaint, plaintiff alleged that the defendants failed to pay his wages in a timely manner without sufficient cause as required by law. Plaintiff subsequently amended his complaint to include a similar allegation under the Louisiana Penalty Wage Statute, LSA–R.S. 23:631, *et seq.*

The case was tried to the Court on February 6, 1987. At the conclusion of trial, the Court dismissed plaintiff's federal claim under Rule 41(b) of the Federal Rules of Civil Procedure on the ground that plaintiff failed to prove that the voyage which he served upon was a foreign voyage within the meaning of 46 U.S.C. § 10301. The Court retained jurisdiction over the state law claim based on diversity jurisdiction. Having reviewed the evidence, the memoranda of counsel, and the applicable law, the Court now makes the following findings of fact and conclusions of law. To the extent that any findings of fact are conclusions of law, they are adopted as such; to the extent that any conclusions of law are findings of fact, they are so adopted.

## FINDINGS OF FACT

### I.

Robert A. Bludworth is the owner of the M/V THUNDER.

### II.

Old River Towing is the operator of the M/V THUNDER.

### III.

The barge PRODUCER is an ABS classified, ocean-going barge, and is owned by Coastal Carriers, Inc.

### IV.

Plaintiff was employed as the chief engineer aboard the M/V THUNDER. He testified that when he was hired, he was told that the vessel would be travelling to Africa.

### V.

On August 20, 1985, plaintiff boarded the M/V THUNDER in Lake Charles, Louisiana. At the time, the M/V THUNDER was undergoing extensive repairs to its main engines and remained in Lake Charles, Louisiana until September 5, 1985. On that date the M/V THUNDER received authorization from Coastal Carriers, Inc. to shift the barge PRODUCER from the Lake Charles City Dock facility to Watson Marine Terminal at Mile 133, Mississippi River, opposite Reserve, Louisiana.

### VI.

On September 6, 1985, the M/V THUNDER made up to the barge PRODUCER and began to tow the barge to Reserve, Louisiana. While enroute, the port main engine suffered an air control malfunction and shut down. The M/V THUNDER continued its voyage to Reserve on its starboard main engine and arrived at Reserve on September 9, 1985.

### VII.

From September 9, 1985 through September 12, 1985, the M/V THUNDER stayed near the barge PRODUCER in Reserve, Louisiana in hopes of securing another assignment from Coastal Carriers to tow the barge PRODUCER.

### VIII.

Plaintiff was discharged on September 12, 1985, and departed the M/V THUNDER in Reserve. As plaintiff was leaving the vessel, the Captain noticed that he had difficulty in removing his bags from the vessel, whereas when he boarded the vessel in Lake Charles, plaintiff carried his bags with ease. The captain informed the vessel owner, Robert Bludworth, who then instructed the captain to check the plaintiff's bags to see if they contained tools from the vessel. The captain thereafter contacted the Sheriff's department. In the presence of the captain and plaintiff, a Sheriff's deputy opened one of plaintiff's bags and discovered a tap and die set clearly marked with the name of the M/V THUNDER. The captain testified that he

saw other tools in plaintiff's suitcase, but the Sheriff's deputy declined to search plaintiff's bags any further. The captain returned the tap and die set to the vessel.

## IX.

After plaintiff's departure, the M/V THUNDER received authorization from Coastal Carriers, Inc. to take the barge PRODUCER from Reserve, Louisiana to Houston City Dock No. 47 in Houston, Texas. On September 14, 1985, the M/V THUNDER began to tow the barge back to Texas. On September 17, 1985, the M/V THUNDER secured the barge PRODUCER at City Dock No. 47 in the Houston Ship Channel. The M/V THUNDER left the barge and travelled to Adams Terminal where she underwent extensive repairs.

## X.

On October 2, 1985, the M/V THUNDER made up to the barge PRODUCER and travelled to Dakar, Senegal, Africa.

## XI.

The M/V THUNDER was usually hired by Coastal Carriers, Inc. on a trip basis via a telex or phone call. The jobs were awarded to the lowest bidder.

## XII.

The M/V THUNDER was on the payroll of Coastal Carriers, Inc. only while it was moving the barge PRODUCER. Once the barge was secured at its destination, the M/V THUNDER, Old River Towing Company, and Marine Specialties Company were no longer on the payroll of Coastal Carriers, Inc.

## XIII.

Although the barge PRODUCER loaded grain in Lake Charles, Reserve and Houston that was designated for Africa, the M/V THUNDER was not hired by Coastal Carriers, Inc. for the voyage to Africa, until October 2, 1985. The voyage of the M/V THUNDER from Lake Charles to Reserve was one voyage; the voyage from Reserve to Houston was one voyage. Once

the M/V THUNDER was secured at Houston City Dock No. 47, the contract of employment between Old River Towing Company, the M/V THUNDER, and Coastal Carriers, Inc. was terminated. The M/V THUNDER did not have any control over the movement or the loading of the barge PRODUCER in Houston.

## XIV.

On September 19, 1985, Robert Bludworth wrote to plaintiff at P.O. Box 1610, Donaldsonville, Louisiana and asked him to furnish a list of tools that had been taken off the vessel so that their value could be deducted from his paycheck. Plaintiff did not respond to Bludworth's letter.

## XV.

On October 7, 1985, plaintiff wrote to Marine Specialties seeking his pay. Although the letter is dated September 7, 1985 (five days prior to plaintiff's leaving the M/V THUNDER), the envelope was postmarked October 7, 1985. The Court believes plaintiff's testimony that the letter was erroneously dated September 7, 1985 and, in fact, was written on October 7, 1985.

The letter states that it is plaintiff's third written request for his pay and that he plans to leave the country in the near future. The letter indicated that the paycheck should be sent to P.O. Box 1610, Donaldsonville, Louisiana. Plaintiff did not own this post office box.

## XVI.

Plaintiff did not leave the country as planned. On November 7, 1985, plaintiff again demanded his pay from Marine Specialties. On this occasion, he filled out a form letter which informed Marine Specialties of its obligations under LSA–R.S. 23:631 and gave plaintiff's address as P.O. Box 1610, Donaldsonville, Louisiana.

## XVII.

When plaintiff was hired, he signed a payroll authorization slip showing his address as 309 N. Brownell, Laporte, Texas.

Plaintiff gave this address because he was planning to move to Texas. The authorization slip required Marine Specialties to hold his paycheck at the office so he could pick it up. They were not authorized to release his paycheck or to mail it to anyone, unless provided written authorization from the employee.

## XVIII.

Robert Bludworth testified that he would have had plaintiff's pay waiting for him in his office pursuant to the payroll authorization. Plaintiff never returned to the offices of Marine Specialties to pick up his paycheck. However, the Court finds that plaintiff's two letters requesting that his paycheck be mailed to him at the Donaldsonville, Louisiana post office box constituted sufficient written authorization.

## XIX.

Bludworth responded in a letter dated November 21, 1985 which again requested plaintiff to send a list of tools that he had taken from the tug the M/V THUNDER. Plaintiff never responded to this letter.

## XX.

After plaintiff engaged a lawyer to represent him concerning his claim for damages, Bludworth forwarded to plaintiff's lawyer payroll check number 6650 in the amount of $1,403.90, representing twelve and one-half days of work.

## CONCLUSIONS OF LAW

### I.

Plaintiff's federal claim is based on 46 U.S.C. § 10313. The application of Section 10313 is limited to vessels on voyages between a port in the United States and a port in a foreign country (except a port in Canada, Mexico, or the West Indies). 46 U.S.C. § 10301(a)(1), (2).

### II.

The Court ruled at the conclusion of trial that plaintiff failed to prove that the voyage which he served upon was a foreign voyage within the meaning of 46 U.S.C. § 10301. The voyage plaintiff served upon was the voyage from Lake Charles to Reserve. The M/V THUNDER was not engaged in a foreign or intercoastal voyage within the meaning of 46 U.S.C. § 10301 until the vessel left its moorings in Houston on October 2, 1985 for Africa.

### III.

Plaintiff's alternative claim is for penalty wages under the Louisiana Penalty Wage Statute, LSA–R.S. 23:631, *et seq.* This state provides in pertinent part that:

A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States Mail to a laborer or other employee, provided postage has been prepaid and the envelope properly addressed to the employee or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. . . .

B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.

### IV.

If the employer does not pay the wages in accordance with R.S. 23:631, penalties may be assessed pursuant to R.S. 23:632, which provides that:

An employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages

from the time of the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney's fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have a lapse from time of making the first demand following discharge or resignation.

### V.

■ Plaintiff did not work for Marine Specialties long enough for a customary method of payment to be established. However, when plaintiff signed his payroll authorization, he agreed to pick up his check at Marine Specialties' office in Friendswood, Texas. Although plaintiff never returned to the offices of Marine Specialties to pick up his paycheck, the Court finds that plaintiff's two letters requesting that his check be mailed to him at the Donaldsonville, Louisiana post office box constituted written authorization sufficient to countermand the payroll authorization. Accordingly, Marine Specialties failed to comply with R.S. 23:631 by not mailing plaintiff's paycheck as per his written requests.

### VI.

As a penal statute, R.S. 23:632 must be strictly construed and consequently, equitable defenses are available. *Holmes v. Tradigrain, Inc.*, 411 So.2d 1132 (La.App. 4th Cir.1982), *writ denied*, 414 So.2d 1252 (La.1982); *Pace v. Parker Drilling Company and Subsidiaries*, 382 So.2d 988, 990 (La.App. 1st Cir.1980), *writ denied*, 383 So.2d 1016 (La.1980); *Lazauskas v. Louisiana Offshore Caters, Inc.*, 371 So.2d 1183 (La.App. 1st Cir.1979).

Whether an employer has an equitable defense to penalty wages depends on the facts of each case. Equitable defenses have been permitted in cases in which the defendant claimed offsets against wages past due based on property of the defendant allegedly being improperly retained by the plaintiff. *Pace*, 382 So.2d at 991; *Colbert v. Mike-Baker Brick Co. of New Iberia, Inc.*, 326 So.2d 900 (La.App. 3d Cir. 1976). In order for the employee to recover, the employer must have acted in an arbitrary and unreasonable manner. *Pittman v. Eyrand*, 290 So.2d 800 (La.App. 4th Cir.1974).

### VII.

■ Marine Specialties was under a duty to pay wages not in dispute (23:631). Bludworth wrote two letters asking plaintiff about its tools, but plaintiff never directly responded to these letters. As a result, whether plaintiff had possession of the tools and, if he did, the value of the tools, could not be determined. Therefore, the entire amount of plaintiff's wages may be said to be in dispute.

### VIII.

Although Marine Specialties did not establish that plaintiff did in fact have possession of its tools, the Court finds that it had reasonable grounds to withhold the plaintiff's wages. The foregoing facts lead this Court to conclude that Marine Specialties reasonably believed it was justified in withholding plaintiff's wages and was not acting arbitrarily or in bad faith. Plaintiff is not entitled to penalty wages under R.S. 23:631, *et seq.*

Accordingly,

IT IS ORDERED that judgment be entered against plaintiff and in favor of the defendants, dismissing plaintiff's claims for penalty wages under 46 U.S.C. § 10313 and LSA R.S. 23:631, *et seq.*, each party to bear its own costs.