451 So.2d 665 (1984)
Robert L. WASHINGTON
v.
BUFFALO MILLS LUMBER COMPANY, INC.
No. 83 CA 0652.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Rehearing Denied June 29, 1984.
*666 Joseph H. Simpson, Amite, for plaintiff-appellant.
George M. Pierson, Baton Rouge, for defendant-appellee.
Before SHORTESS, LANIER, CRAIN, JJ.
SHORTESS, Judge.
Robert L. Washington's (plaintiff) employment by Buffalo Mills Lumber Company, Inc. (defendant) was terminated on September 15, 1982. He had been employed stacking lumber in defendant's lumber yard. Defendant deducted the sums of $22.00 and $15.00 from plaintiff's payroll check for the pay period ending September 11, 1982. It claimed these amounts were paid for plaintiff's non-work-related medical bills. Plaintiff received his final check at defendant's offices on September 17. Unhappy with the deductions, he held the check and called Chester Pritchett, defendant's general manager, on September 23. Pritchett told plaintiff that he would "look into" the matter with Conway Guiteau, Jr., defendant's president, who was responsible for the deductions.[1] The testimony and exhibits at trial revealed that in the two months plaintiff worked for defendant he sustained two injuries during working hours. The first, on August 4, occurred when a load of lumber fell on plaintiff's foot. Plaintiff was seen by Dr. R.E. Goldsby who sent him to Hood Memorial Hospital where he was x-rayed. The hospital billed defendant $22.00, and Goldsby sent a bill for $15.00. These amounts were paid by defendant.
The second incident occurred when plaintiff complained of pain and muscle spasm in his back after stacking lumber on August 27. He was taken by a fellow worker, Ellis Harrell, to see Dr. Thomas C. Evans, who billed defendant for a $15.00 office visit which defendant paid.
Pritchett testified that he disputed whether the August 27 incident was work-related and therefore thought it appropriate to deduct the amount of Dr. Evans' bill. However, Pritchett also testified that he mistakenly thought the $22.00 x-ray charge for the August 4 foot incident was incurred with the August 27 spasm incident. Therefore, he ordered the deduction of both the $15.00 and $22.00 amounts. Plaintiff informed Pritchett of these errors in a September 23 telephone conversation. Pritchett testified that immediately thereafter he issued plaintiff a check for $22.00 and put it at defendant's guardhouse for plaintiff. At this time defendant also issued a $4.00 check to plaintiff for wages earned in the short time he worked on September 15, the day of his discharge. This check was also placed at the guardhouse. Both checks were dated September 24. Pritchett testified that he still disputed whether the $15.00 muscle spasm bill was work-related.
By September 28, plaintiff had not received the $22.00 check in the mail and instituted this suit for earned wages, penalty wages, and attorney fees under La.R.S. 23:631 and 632. Upon advice of its attorneys, defendant issued checks to plaintiff *667 for $22.50 (sic) and $15.00. These checks were dated and mailed on October 1, 1982.
The trial court rendered judgment for plaintiff for $37.00[2] and awarded $300.00 attorney fees. In written reasons for judgment, it found defendant in violation of La.R.S. 23:631 for failing to pay the $22.00 and $15.00 within the required time and stated that "[t]he Court does not feel that defendant was guilty of any conduct that would warrant the assessment of penalties."
Plaintiff has appealed alleging as error the failure of the trial court to award statutory penalty wages and asking for an increase in the attorney fees awards to at least $1,000.00.
Clearly, defendant did not comply with subsection A of La.R.S. 23:631, in that it did not "pay the amount then due under the terms of employment ... not later than three days following the date of discharge." The issue to be resolved is whether or not there was a "dispute" as to the amount due plaintiff, as provided for in subsection B of La.R.S. 23:631. If it is determined that a bona fide dispute as to wages due existed at the time of the refusal or failure to pay, no penalties will be awarded. Becnel v. Answer, Inc., 428 So.2d 539 (La.App. 4th Cir.1983), application not considered, 433 So.2d 158 (La. 1983); Holmes v. Tradigrain, Inc., 411 So.2d 1132 (La.App. 4th Cir.1982), writ denied, 414 So.2d 1252 (La.1982). For the employee to recover, the employer must have been motivated by bad faith or must be found to have acted in an arbitrary or unreasonable manner. Becnel, 428 So.2d at 543; Pittman v. Eyrand, 290 So.2d 800 (La.App. 4th Cir.1974).
Defendant's actions of withholding the $22.00 and $15.00 sums were clearly arbitrary and/or unreasonable. As noted earlier, Pritchett testified that the reason he withheld the $22.00 was his "mistaken" impression that the charge had arisen from the muscle spasm incident which he deemed non-work-related. Assuming for the sake of argument that the muscle spasm was not work-related, Pritchett's inattentiveness and negligence in instructing his secretaries to make the deduction without first ascertaining which incident necessitated the x-rays is patently arbitrary and unreasonable. The employer's negligence in failing to pay wages due his employee upon termination does not relieve him of the duty imposed by the statute. Becnel, 428 So.2d at 543; Holmes, 411 So.2d at 1134; Pace v. Parker Drilling Company & Subsidiaries, 382 So.2d 988 (La.App. 1st Cir.1980), writ denied, 383 So.2d 1016 (La. 1980).
Additionally, we find no support in the record for the deduction of the $15.00 bill from Dr. Evans. Plaintiff testified regarding that incident as follows:
Q What exactly happened to you with regard to that muscle spasm?
A Well, I was stacking lumber, we were stacking lumber. We stack a bundle and band it then we have to stack another bundle on top of it. As we were stacking the lumber stacking it and I told a couple of my friends that I had a pain in my back and my back was hurting. And I told them that I was going to the office and when I went to the office and I told Mr. Pritchett. And Mr. Conway was in the office too and he told me he said well Mr. Conway told him he said, well he said his back is hurting well let him go ahead on.
Q And you left work that day and went and saw Dr. Evans?
A Yes, sir.
This testimony was corroborated by that of Ellis Harrell, the co-worker who took plaintiff to Dr. Evans' office that day. Compare the testimony of Chester Pritchett regarding the same incident:
Q You still dispute the muscle spasm as a job related injury?

*668 A That is correct.
Q What is the basis of your dispute?
A His work record, his general attitude at work.
Q Could you elaborate?
A Well, his trip to Texas involving the death in a family I know that for a fact that they did have a death in the family. And that he had consulted our yard superintendent and was allowed a half day off from work to attend the funeral. And I doubt seriously he has never told us anything, never offered any explanation for his absences. He has been absent six times with two excused absences. And warned numerous times so I just feel like his general work record was very poor and had it not been that week it probably would have been the next week that he would have been terminated.
Pritchett also testified that no investigation of any kind was made of this incident:
Q ... Did you investigate the second incident?
A No, sir.
Q The muscle spasm?
A No, sir.
Q You made no investigation whatsoever?
A No, sir.
....
Q And on the $15.00 although you have some doubt in your mind as to how it occurred you paid him checks after that and you never made any type of investigation and you didn't deduct it until you fired him, is that correct?
A In the $15.00 that is correct.
Based on the foregoing testimony, we conclude that defendant's deductions were arbitrary and unreasonable and not made pursuant to bona fide disputes. Under the provisions of La.R.S. 23:632 defendant is liable for the penalty wages.
La.R.S. 23:632 provides that the penalty wages shall be the lesser of (1) ninety days wages at the employee's daily rate of pay, or (2) full wages from the time of employee's demand for payment to the time the employer shall pay or tender the amount of unpaid wages due the employee. Plaintiff testified that he normally worked a five-day week, from 7:30 a.m. to 5:00 p.m. and sometimes half a day on Saturdays. Plaintiff's time card for the pay period ending September 11, 1982, is consistent with his testimony. The time card also showed three lunch breaks which averaged between 45 minutes to an hour. We find that a reasonable calculation of plaintiff's penalty wages is on an 8-hour day, 5 days a week scale. We note from the exhibits that plaintiff's rate of pay was $3.35 an hour and that the proper time period for the calculation under the statute is from plaintiff's demand, September 23[3], to tender of the arbitrarily disputed amount. Tender of the last disputed amount occurred on October 1 when defendant mailed to plaintiff a check for the $15.00 deduction. Therefore, the penalty wages in this case for 6 days, 8 hours a day, at $3.35 an hour, amounts to $160.80. The worker's usual holidays of Saturday, September 25, and Sunday, September 26, 1982, are excluded in computation of the penalty wages. See Soday v. Mall Snacks, Inc., 374 So.2d 138 (La.App. 1st Cir.1979); Seal v. Marco's, Inc., 343 So.2d 749 (La.App. 3rd Cir.1977); Carr v. Pelican Remodelers, Inc., 250 So.2d 220 (La.App. 4th Cir.1971), writ refused, 259 La. 807, 253 So.2d 66 (1971). But see Carey v. Orleans Ins. Co., 337 So.2d 317 (La.App. 4th Cir.1976) (daily rate calculated on a five-day work week basis used to compute an award based on the entire 24-day period from August 25 to September 19, 1972).
Plaintiff urges that he is entitled to receive an increase in attorney fees from the $300.00 awarded by the trial court. We note that La.R.S. 23:632 awards reasonable attorney fees "in the event a well-founded suit for any unpaid wages whatsoever be *669 filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation." (Emphasis added) It is undisputed that plaintiff's first demand was communicated to defendant through a telephone call on Thursday, September 23, 1982. This suit was filed on Tuesday, September 28, 1982. La.R.S. 1:55(E) states that "all Saturdays and Sundays, shall be considered as legal holidays for the purposes of Article 5059 of the Louisiana Code of Civil Procedure." That code article, furthermore, directs us to compute the time period prescribed by the statute by not including "the date of the act, event, or default after which the period begins to run." Further, legal holidays are to be excluded from the computation when the period is less than seven days. Following these rules, only Friday, September 24 and Monday, September 27, 1982, elapsed before suit was filed on Tuesday, September 28. Construing the penal statute of La.R.S. 23:632 strictly[4] as we must, we find that plaintiff sued too soon to entitle him to an attorney fees award. The award of attorney fees made in the trial court is reversed.
For the foregoing reasons, judgment is rendered herein in favor of plaintiff and against defendant for $160.80 in penalty wages, with interest at the legal rate from date of judicial demand until paid. All costs are taxed to defendant.
AFFIRMED AS AMENDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Appellant has called our attention to the fact that appellee did not appeal or answer his appeal, so the trial court's award of $300.00 in attorney fees to appellant was a final judgment. This contention is correct and unfortunately we overlooked that fact. The $300.00 awarded at the trial level had become final and our decision reversing it was erroneous. Accordingly, that award is reinstated. In all other respects, we adhere to our original opinion.
Accordingly, our original judgment is amended to the following extent: judgment is rendered herein in favor of plaintiff and against defendant for $160.80 in penalty wages and $300.00 in attorney fees, with interest at the legal rate from date of judicial demand until paid. All costs are taxed to defendant.
NOTES
[1] Pritchett later admitted that it was his decision to make the deductions, not Guiteau's. This testimony corroborated Guiteau's professed ignorance of the entire transaction.
[2] In its trial brief, plaintiff acknowledged that the two checks dated October 1 for $22.50 and $15.00 had been received and negotiated by him. The trial court judgment should have reflected this fact.
[3] September 23 is excluded as per La.C.C.P. art. 5059.
[4] See Magee v. Engineered Mechanical Services, Inc., 415 So.2d 277 (La.App. 1st Cir.1982), writ denied, 420 So.2d 455 (La.1982).