681 So.2d 489 (1996)
Linda POKEY
v.
FIVE L INVESTMENTS, INC.
No. 96 CA 0018.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*490 Michael E. Parks, New Roads, for Plaintiff/Appellee.
Ralph B. Chustz, New Roads, for Defendant/Appellant.
Before CARTER, PARRO, and McDONALD,[1] JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, awarding plaintiff penalty wages and attorney's fees, in accordance with LSA-R.S. 23:631 and 632, for defendant's failure to timely pay plaintiff's final wages following her termination from employment.

FACTS
Prior to May 28, 1992, plaintiff, Linda B. Pokey, was employed by defendant, Five L Investments, Inc., as a convenience store clerk. At the close of business on May 28, 1992, Marty Lemoine and Gary Phillips, coowners of the convenience store, terminated plaintiff's employment and instructed plaintiff to remain off of the business premises.
On the following morning, May 29, 1992, plaintiff went to the store to obtain her final paycheck. The store manager, Pete Leger, indicated that plaintiff was not supposed to be on the premises and that her check would not be ready until the following day. Leger stated that plaintiff could either pick up the check or that he could mail it to her. Plaintiff stated that she was not returning to the store and requested that the check be mailed to her.
On the following morning, May 30, 1992, Leger prepared plaintiff's final paycheck and placed it into the store's cash register. Leger informed the other store employees that the check was in the cash register and instructed them to release the check to plaintiff upon her arrival. The check remained in the store's cash register until approximately August 24, 1992.
Prior to August 24, 1992, plaintiff telephoned the store's bookkeeper, Mary Phillips, again requesting her final paycheck. Because incorrect deductions had been made when preparing the check, Leger prepared another check in the proper amount. On or about August 24, 1992, the check was made available to plaintiff.
On May 28, 1993, plaintiff filed a petition, seeking penalty wages, attorney's fees, and costs, under the provisions of LSA-R.S. 23:631 and 632, for defendant's alleged failure to timely pay plaintiff's final wages.
Defendant answered the petition, contending that, within three days of the date of plaintiff's discharge, her wages were available to be picked up at the store, which was the normal and customary method of payment to all employees. Defendant also contended that plaintiff's failure to collect her final wages was the result of her own fault or neglect.
On September 7, 1995, trial on the merits was held. On September 29, 1995, the trial court rendered judgment in favor of plaintiff for penalty wages in the amount of $3,289.50 and attorney's fees in the amount of $1,500.00. On December 20, 1995, pursuant to a request for written reasons for judgment, the trial court rendered an "Opinion," noting the following factual findings:
Plaintiff was employed by defendant at one of its convenience stores in Pointe Coupee Parish and was terminated on May 28, 1992. On May 29, 1992, plaintiff returned to the store requesting her final pay check and was first questioned as to why she was on the premises and informed by the Manager, Pete Leger, that she had been forbidden to return to the store. Mr. Leger, then informed her that her check was not ready. Pursuant to the credible testimony of Susan Dupont and Betty Terrel, after Mr. Leger had informed Ms. Pokey that the check was not ready she requested that the check be mailed and Mr. Leger responded in the affirmative. *491 A paycheck was prepared for Ms. Pokey dated May 30, 1992, for an incorrect amount, but the check was never mailed. Ms. Pokey received a check in the mail with the envelope post marked August 24, 1992. Mr. Pete Leger testified that he was the one who had addressed the envelope which contained the check that Ms. Pokey received on August 24, 1992.
In applying the law to the facts, the trial court noted, in part, as follows:
This court is of the opinion that taking into consideration the fact that Ms. Pokey had been forbidden to return to the store, and that on May 29, 1992 when she requested that her check be mailed and Mr. Leger responded that he would, as evidenced by the testimony of plaintiff's credible witnesses, Mr. Leger's agreement to mail the check to plaintiff was sufficient to countermand the customary method of picking up the check from the store.
Defendant appealed from the adverse judgment, assigning the following specifications of error:[2]
(1) The trial court erred in finding that plaintiff could not return to the Five L store premises to pick up her final check because she had been forbidden to enter upon the premises.
(2) The trial court erred in finding that plaintiff was entitled to have her final check mailed to her.
(3) The trial court erred in finding that plaintiff's wages were not paid within three days following her discharge from employment.
(4) If this Honorable Court nevertheless finds that plaintiff is entitled to penalty wages, the trial court erred in calculating the amount due.
(5) The trial court erred in awarding plaintiff attorney's fees.

PENALTY WAGES AND ATTORNEY'S FEES
Defendant contends that the trial court erred in awarding plaintiff penalty wages and attorney's fees.
At all times pertinent hereto, LSA-R.S. 23:631[3] provided as follows:
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section. (Emphasis added.)
*492 Thus, the employer must pay the amount then due under the terms of employment not later than three days following the date of discharge. Batiansila v. Advanced Cardiovascular Systems, Inc., 952 F.2d 893, 894 (5th Cir.1992); Cochran v. American Advantage Mortgage Company, Inc., 93-1480 pp. 6-7 (La.App. 1st Cir. 6/24/94); 638 So.2d 1235, 1239; Washington v. Buffalo Mills Lumber Company, Inc., 451 So.2d 665, 667 (La.App. 1st Cir.1984).
LSA-R.S. 23:632 provides as follows:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Thus, to recover penalties under 23:632, three criterion must be met: (1) The employee must prove that wages were due and owing; (2) that demand for payment was made at the place where the employee was usually paid; and (3) that the employer failed to pay upon demand. Sam v. Jhane Home Health Care Services, Inc., 95-0081 p. 2 (La. App. 4th Cir. 6/7/95); 657 So.2d 559, 561.
LSA-R.S. 23:632 is penal in nature and must be strictly construed. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 p. 4 (La.10/17/94); 644 So.2d 619, 621; Sam v. Jhane Home Health Care Services, Inc., 657 So.2d at 561; Guinn v. International Maintenance Corporation, 583 So.2d 915, 917 (La. App. 1st Cir.1991). This statute is designed to compel prompt payment of wages upon an employee's discharge or resignation. Boudreaux v. Hamilton Medical Group, Inc., 644 So.2d at 621.
A trial court's findings of fact with regard to whether plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error or unless clearly wrong. See Trahan v. Pousson, 497 So.2d 58, 59 (La.App. 3rd Cir.1986). Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Shelton v. Wall, 614 So.2d 828, 832 (La.App. 2nd Cir.1993). When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-83 (La.1993); Shelton v. Wall, 614 So.2d at 832. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one in view of the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Harris v. Bronco Construction Company, 93-2139 p. 5 (La.App. 1st Cir. 10/7/94); 644 So.2d 805, 807, writ denied, 94-2740 (La.1/6/95); 648 So.2d 931.
A. Plaintiff's Entitlement to Penalty Wages
In the instant case, the following witnesses testified at trial: plaintiff, Susan Dupont, Betty Terrell, Mary Phillips, Marty Lemoine, Pete Leger, and Mary Wells. The documentary evidence presented at trial consisted of a photocopy of the August 24, 1992, check made payable to plaintiff, and an envelope addressed to plaintiff, postmarked August 24, 1992, with defendant's return address on it.
Plaintiff testified that she was employed by defendant as a convenience store clerk, earning $4.25 per hour, and that she worked approximately forty (40) hours per week. Plaintiff estimated that she worked approximately nine (9) hours per day and stated that she was paid biweekly. On May 28, 1992, Marty Lemoine and Gary Phillips, co-owners of the store, terminated plaintiff's employment *493 and instructed her to remain off of the business premises.
On May 29, 1992, plaintiff went to the store to obtain her final paycheck. According to plaintiff, present in the store were Pete Leger (the store manager), Susan Dupont, and Betty Terrell. Leger told plaintiff that she was banned from the premises and that her check would not be ready until the following day. Plaintiff indicated that she would not return to the store on the following day in fear of being arrested, but that the check could be mailed to her. Leger stated that such arrangement would be "fine," and plaintiff left the store. According to plaintiff, she customarily was paid at the store, but her home address was on file at the store.
Plaintiff testified that she did not receive her final paycheck within three days of her discharge. Plaintiff explained that, in August of 1992, she called the store and again requested her check. Plaintiff testified that she did not give her address to anyone at that time. Plaintiff stated that she subsequently received the check in the mail on or about August 24, 1992, and identified Plaintiff's Exhibit 1 as a copy of the check which she received. Plaintiff identified Plaintiff's Exhibit 2 as the envelope in which the check arrived. Plaintiff noted that the envelope was postmarked August 24, 1992, had her correct address on it with defendant's return address, and was addressed in Leger's handwriting.
Pete Leger testified that, in May of 1992, he was employed by defendant as a convenience store manager. While he was present at the store on May 29, 1992, plaintiff arrived, requesting her final paycheck. Leger telephoned one of the store's owners, Marty Lemoine, who instructed Leger to tell plaintiff that her check would not be ready until the following day. Plaintiff indicated that she could not return to the store, and Leger asked plaintiff to give him her address so that he could mail the check to her. Leger indicated that, because he had been working at the store for only a short period of time, he did not realize that plaintiff's address was on file. According to Leger, plaintiff refused to give him her address.
Leger prepared plaintiff's paycheck on the following day and placed it into the store's cash register. Leger then instructed the other employees to release the check to plaintiff upon her arrival. According to Leger, plaintiff never returned to the store for her check, which remained in the store's cash register. Leger did not mail the check to plaintiff.
On or about August 24, 1992, Leger was instructed to prepare a new paycheck for plaintiff because improper deductions had been made from the first check, so he prepared another check for the proper amount. According to Leger, plaintiff picked up the check at the store.
When Leger was shown Plaintiff's Exhibit 1, a copy of the August 24, 1992, check made payable to plaintiff, he acknowledged that the check had been signed by him, and he stated that plaintiff had picked up the check. When Leger was shown Plaintiff's Exhibit 2, the envelope in evidence, he acknowledged that the envelope was addressed in his handwriting. Leger explained that he had addressed the envelope on the same day that he had prepared the check, but he did not mail the check to plaintiff.
Susan Dupont testified that she had previously been employed by defendant and that she had been plaintiff's supervisor. Although Dupont was no longer employed by defendant in May of 1992, she was present in the store on May 29, 1992, when plaintiff arrived, requesting her final paycheck. Dupont indicated that Leger telephoned Marty Lemoine and then told plaintiff that she was not supposed to be on the premises. Leger then told plaintiff that her check would not be ready until the following day. Plaintiff indicated that she would not return to the store, but that her check could be mailed to her. According to Dupont, Leger agreed to mail the check to plaintiff. Dupont stated that Leger did not ask plaintiff for her address, and plaintiff did not give it to Leger.
Betty Terrell testified that she was working at defendant's store on May 29, 1992, when plaintiff arrived, requesting her final paycheck. Leger telephoned Marty Lemoine and then told plaintiff that she was not supposed to be on the premises. Leger informed *494 plaintiff that her check would be ready on the following day and that she could either pick up the check or it could be mailed to her. Plaintiff indicated that she was not returning to pick up the check because she was banned from the premises. According to Terrell, Leger then agreed to mail the check to plaintiff, and Leger did not ask plaintiff for her address.
Mary Phillips testified that she is employed as defendant's secretary/bookkeeper. According to Phillips, Leger prepared the payroll, but she checked the payroll records. After plaintiff's termination on May 28, 1992, plaintiff's final paycheck was placed in the store's cash register because Leger indicated that plaintiff was going to pick up the check. According to Phillips, just prior to August 24, 1992, plaintiff called her, requesting her final paycheck. Another check was prepared for plaintiff because improper deductions had been made from the May 30, 1992, check. Phillips "assumed" that plaintiff picked up the check at the store on August 24, 1992. However, Phillips stated that she was not present when the check was picked up. Phillips testified that plaintiff's address had been on file at the store since her date of hire.
Marty Lemoine testified that he is president of the defendant corporation which owns the convenience store. Lemoine indicated that he was involved in terminating plaintiff on May 28, 1992. According to Lemoine, as far as he was concerned, plaintiff could return on the store premises to obtain her final paycheck, and he did not tell plaintiff that she was banned from the premises.
Mary Wells testified that she worked for defendant at the convenience store in May of 1992. On May 30, 1992, Wells was informed that plaintiff had been fired, and plaintiff's check was placed into the store's cash register where it remained for some time. Wells indicated that store employees were paid biweekly and that checks were customarily dispersed at the store and were not mailed.
After hearing the testimony and considering the evidence, the trial court made the following factual findings:
Plaintiff was employed by defendant at one of its convenience stores in Pointe Coupee Parish and was terminated on May 28, 1992. On May 29, 1992, plaintiff returned to the store requesting her final pay check and was first questioned as to why she was on the premises and informed by the Manager, Pete Leger, that she had been forbidden to return to the store. Mr. Leger, then informed her that her check was not ready. Pursuant to the credible testimony of Susan Dupont and Betty Terrel, after Mr. Leger had informed Ms. Pokey that the check was not ready she requested that the check be mailed and Mr. Leger responded in the affirmative. A paycheck was prepared for Ms. Pokey dated May 30, 1992, for an incorrect amount, but the check was never mailed. Ms. Pokey received a check in the mail with the envelope post marked August 24, 1992. Mr. Pete Leger testified that he was the one who had addressed the envelope which contained the check that Ms. Pokey received on August 24, 1992.
We have thoroughly reviewed the entire record in this matter and find that there is a reasonable basis in the record for each of the trial court's factual determinations. Accordingly, those factual determinations cannot be manifestly erroneous or clearly wrong.
We also find no error in the trial court's conclusion that plaintiff proved her entitlement to penalty wages. The record reveals that (1) wages were due and owing; (2) plaintiff made demand for payment at the place where she was usually paid; and (3) defendant failed to pay plaintiff her wages within three days of her discharge. See Sam v. Jhane Home Health Care Services, Inc., 657 So.2d at 561.
With regard to the third criterion, defendant contends that its employees were customarily paid at the store and that checks were never mailed to the employees. Therefore, defendant reasons that, by preparing plaintiff's check on May 30, 1992, two days after her discharge, and placing the check into the store's cash register, defendant fulfilled its duties under LSA-R.S. 23:631. Ordinarily, this would be true. However, the testimony of plaintiff, Susan Dupont, and Betty Terrell, which was found to be credible *495 by the trial court, clearly indicates that Leger agreed to mail plaintiff her check, thereby countermanding the customary manner of payment.
Payment by mail is permitted by LSA-R.S. 23:631, provided that postage is prepaid and the envelope is properly addressed with the employee's current address as shown in the employer's records. The record supports the trial court's finding that, on or about August 24, 1992, plaintiff received in the mail a check, dated August 24, 1992, and enclosed in an envelope properly addressed and postmarked August 24, 1992.
Based on the record before us, we conclude that the trial court correctly awarded plaintiff penalty wages in accordance with LSA-R.S. 23:631 and 632.
B. Amount of Penalty Wages Due Plaintiff
Defendant contends that the trial court erred in calculating the amount of penalty wages due plaintiff.
LSA-R.S. 23:632 provides that penalty wages shall be the lesser of (1) ninety (90) days wages at the employee's daily rate of pay or (2) full wages from the time of the employee's demand for payment to the time the employer shall pay or tender the amount of unpaid wages due the employee. Washington v. Buffalo Mills Lumber Company, Inc., 451 So.2d at 668.
Plaintiff testified that she earned $4.25 per hour and that she worked approximately forty (40) hours per week. Plaintiff estimated that she worked approximately nine (9) hours per day, four (4) or five (5) days per week. Mary Phillips, defendant's secretary/bookkeeper, indicated that plaintiff was an hourly employee, earning $4.25 per hour. According to Phillips, plaintiff worked four (4) or five (5) days per week and averaged approximately fifty-five (55) hours every two (2) weeks. Phillips indicated that the payroll records do not reveal how many hours plaintiff worked per day, nor could she estimate how many hours plaintiff worked per day, as it would be pure speculation. Plaintiff's Exhibit 1, which was the August 24, 1992, payroll check, showed that, for the two-week pay period ending May 30, 1992, plaintiff worked 66.75 hours at a rate of $4.25 per hour. There was no other testimony or evidence presented regarding plaintiff's daily rate of pay or the amount of her full wages.
In awarding plaintiff penalty wages of $3,289.50, the trial judge apparently accepted plaintiff's testimony that she worked nine (9) hours per day at an hourly wage of $4.25. Accordingly, the trial judge evidently determined that plaintiff's daily wage rate was $38.25 and awarded her penalty wages at that rate for eighty-six (86) days from the date of discharge to the date of tender of the wages ($38.25 × 86 days = $3,289.50).
However, as previously indicated, under LSA-R.S. 23:632, plaintiff is entitled to the lesser of (1) ninety (90) days wages at plaintiff's daily rate of pay or (2) full wages from the date of plaintiff's demand for payment to the date of tender.
Ninety (90) days wages at plaintiff's daily wage rate of $38.25 equals $3,442.50. However, we must also determine the amount of plaintiff's full wages for the eighty-six (86) day period from date of demand to date of tender (May 29, 1992 to August 24, 1992). Although it is undisputed that plaintiff earned $4.25 per hour, the evidence regarding the number of hours plaintiff regularly worked is not so clear. Plaintiff testified that she worked approximately forty (40) hours per week. Defendant's secretary/bookkeeper testified that plaintiff averaged fifty-five (55) hours every two weeks. Plaintiff's paycheck, which was introduced into evidence as Plaintiff's Exhibit 1, showed that plaintiff had worked sixty-six and three-quarter (66.75) hours during that pay period. Using the amount of wages actually earned by plaintiff during the pay period preceding her discharge, plaintiff's full wages were $141.85 per week. Plaintiff's full wages for the 12.29 weeks (the eighty-six (86) day period from date of demand to date of tender) total $1,743.34.
Accordingly, plaintiff is entitled to penalty wages in the lesser amount of $3,442.50 or $1,743.34. The trial court incorrectly awarded plaintiff penalty wages in the amount of $3,289.50. Therefore, we amend the judgment *496 to award plaintiff penalty wages in the amount of $1,743.34 only.
C. Attorney's Fees
Defendant contends that plaintiff is not entitled to attorney's fees under LSA-R.S. 23:632 and that the trial court erred in awarding them to plaintiff.[4] Defendant argues that it complied with the three-day requirement of LSA-R.S. 23:631 by having plaintiff's final paycheck available to be picked up by her at the store two days after the date of her discharge.
LSA-R.S. 23:632 provides for the award of reasonable attorney's fees in the event that a plaintiff files a well-founded suit for unpaid wages. Cochran v. American Advantage Mortgage Company, Inc., 638 So.2d at 1240; Henderson v. Kentwood Spring Water, Inc., 583 So.2d 1227, 1233 (La.App. 1st Cir. 1991); Glover v. Diving Services International, Inc., 577 So.2d 1103, 1108 (La.App. 1st Cir.1991). The attorney's fee award is to be taxed as costs against the employer. LSA-R.S. 23:632; Cochran v. American Advantage Mortgage Company, Inc., 638 So.2d at 1240.
Because we find no error in the trial court's finding that defendant failed to pay plaintiff her wages within three days of her discharge, we find no error in the trial court's award of attorney's fees to plaintiff.

CONCLUSION
For the foregoing reasons, that part of the judgment, awarding plaintiff $3,289.50 in penalty wages, is amended to award plaintiff penalty wages in the amount of $1,743.34 only. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed against defendant.
AS AMENDED, AFFIRMED.
NOTES
[1] Judge J. Michael McDonald, Nineteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although the opinion does not address each assignment of error separately, the opinion adequately disposes of all issues raised.
[3] This statute was amended by Acts 1995, No. 325, § 1. The amended version of the statute divided paragraph A into subparagraphs A(1)(a) (discussing the employer's duty to pay the employee the amount then due within three days of the discharge of the employee), A(1)(b) (discussing the employer's duty to pay the employee the amount then due within fifteen days of the resignation of the employee), A(2) (discussing the place and manner of payment), and A(3) (discussing nonapplicability of the subsection when there is a collective bargaining agreement).
[4] We note that defendant did not appeal the amount of attorney's fees awarded to plaintiff.