| ¡WHIPPLE, J.
This is an appeal by plaintiff, Michael Kern, from an adverse judgment in a suit for the recovery of wages allegedly due him, upon his May 12, 1995 resignation from employment with defendant, River City Ford, Inc. Plaintiff asserted his entitlement to unpaid wages pursuant to LSA- *980 R.S. 23:631 and penalty wages and attorney’s fees pursuant to LSA-R.S. 23:632. The trial court granted defendant’s motion for involuntary dismissal on the issues of penalty wages and attorney’s fees and further rendered judgment dismissing plaintiffs claim for unpaid wages at the conclusion of trial. Plaintiff appeals. For the following reasons, we reverse, render in part and remand.
FACTS AND PROCEDURAL HISTORY
Plaintiff began working for defendant as a finance and insurance manager (F and I manager) on April 1, 1995. On that date, the parties entered into a written contract, setting forth plaintiffs compensation.
On May 12, 1995, plaintiff voluntarily resigned at the end of the work day, and at that time, he orally requested his final paycheck from his supervisor, Jared Gaiennie. Plaintiff also handed Jared Gaiennie a written resignation letter, placed a copy of the letter on the desk of Valerie Gullarian, the head of the accounting department, and slipped a copy of the letter under the door of the office of Phyllis Mack, the payroll clerk.
On the following Monday, May 15, 1995, plaintiff telephoned Ms. Mack to again request his final paycheck, at which time he was told that he should not expect his final check until June 10, 1995, when all paychecks were normally issued. Believing that the final paycheck would be mailed to him, plaintiff simply waited to receive the final check in the mail.
When he had not received a check by June 26, 1995, plaintiff again telephoned Ms. Mack to inquire about the check. At that point, Ms. Mack |ainformed plaintiff that she had not received any instructions from her supervisors to issue him a check and that accordingly, there was no paycheck for him.
Thereafter, on June 27, 1995, plaintiff mailed a written request for his final paycheck to Jimmy Gaiennie, the individual who had actually hired plaintiff. However, Jimmy Gaiennie never signed for the letter, which was sent certified mail, and the letter was subsequently returned to plaintiff undelivered.
In August of 1995, plaintiff retained the services of an attorney to assist him in collecting his final paycheck. Counsel for plaintiff mailed a demand letter dated August 15, 1995, to defendant, claiming that plaintiff was owed $2,698.05 in unpaid wages. In response, defendant mailed plaintiffs counsel a check reflecting gross pay of $859.30, which it claimed represented the undisputed portion of plaintiffs wages.
Contending that he was still owed additional pay, plaintiff filed suit on October 27, 1995, seeking unpaid wages, penalty wages and attorney’s fees pursuant to LSA-R.S. 23:631 and 632. A bench trial was conducted on September 5,1997. The only witnesses who testified were plaintiff; Ms. Phyllis Mack, defendant’s payroll clerk; and Mr. Joseph Keith Decell, the individual who was responsible for making the necessary calculations for computing the pay of defendant’s “F & I” managers. At the close of plaintiffs case, defendant moved for a partial judgment of involuntary dismissal as to plaintiffs claims for penalty wages and attorney’s fees, which was granted by the trial court. At the end of the trial, the trial court further rendered judgment, dismissing plaintiffs claim for unpaid wages. A written judgment dismissing plaintiffs suit with prejudice was signed on October 2, 1997, and from this judgment, plaintiff appeals.
PLAINTIFF’S ENTITLEMENT TO ADDITIONAL WAGES
Plaintiff contends that the trial court erred in concluding that he had not proven his entitlement to any additional wages. Because this issue was fully | ¿litigated and the trial court ruled on plaintiffs entitlement to additional wages after a complete trial on the merits of this claim, we address this issue first.
*981 Louisiana Revised Statute 23:631 imposes a duty upon the employer, upon discharge or resignation of any employee, to pay the employee the amount then due, under the terms of the employment, whether the employment is by the hour, day, week or month, not later than three days following the date of discharge or resignation.[1] Cochran v. American Advantage Mortgage Company, Inc., 93-1480, p. 6 (La.App. 1st Cir.6/24/94); 638 So.2d 1235, 1239. Plaintiffs entitlement to additional compensation herein is governed by the terms of his employment contract with defendant.
It is undisputed that the parties entered into a written contract of employment on April 1, 1995, which set forth the terms of plaintiffs compensation. Plaintiff introduced this contract into evidence at trial, which provided that, as F and I manager, plaintiff was to be paid a base salary of $2,000.00 per month, $10.00 per warranty sold and 5% of “the net F & I after chargebacks .” Pursuant to the terms of the contract, plaintiff was to receive a $1,500.00 draw on the 15th and 30th of the month and a “settle-up check” on the 10th of the following month. Additionally, pursuant to the contract, plaintiff was guaranteed a monthly salary of $4,000 .00 for the first ninety days of his employment. Plaintiff testified and also introduced documentation to support his ^calculations of compensation due under the terms of this contract.
Nonetheless, defendant averred, and the trial court apparently accepted, that plaintiffs compensation plan had been subsequently modified. The burden of proving an alteration in the terms of a written employment agreement lies with the party alleging the change. Scallan v. Mark Petroleum Corporation, 303 So.2d 498, 500 (La.App. 2nd Cir.1974), writ denied, 307 So.2d 370 (La.1975). Defendant did not introduce any document evidencing a subsequent written agreement signed by the parties to establish this change. Thus, it had the burden of proving an oral modification to plaintiffs compensation scheme. An oral contract for a value in excess of five hundred dollars must be proven by at least one witness and other corroborating circumstances. LSA-C.C. art. 1846; Pennington Construction, Inc. v. R A Eagle Corporation, 94-0575, pp. 4-5 (La.App. 1st Cir.3/3/95); 652 So.2d 637, 639. After careful review, based on the record before us, we must conclude that defendant failed to meet its burden of proof as to an alteration of the terms of plaintiffs employment contract.
The only testimony offered by defendant to establish an alteration in plaintiffs compensation plan was that of Ms. Mack, the payroll clerk. According to Ms. Mack, plaintiff was to be paid under a different pay plan beginning on May 1, 1995. She testified that during the month of May, plaintiff had received two checks under this alleged new pay plan, which defendant avers demonstrated plaintiffs acquiescence in the plan.
However, upon further questioning, Ms. Mack verified that the two checks plaintiff received pursuant to the alleged new pay plan represented plaintiffs draw during that month. Although certain terms differ under the modified pay plan as alleged by *982 defendant, the amount of draw, i.e., $3,000.00 per month, did not ^change.[2] Thus, evidence of receipt by plaintiff of his draw during the month of May, standing alone, does not establish the existence of or his acquiescence in the purported “new” compensation plan.
Additionally, the only documentary evidence in the record purporting to set forth the alleged new terms of plaintiffs compensation is an unsigned, handwritten sheet, setting forth compensation terms for F and I managers, which differ substantially from the terms of plaintiffs written compensation contract. In addition to setting forth compensation terms, the document contains a formula for calculating pay. The formula contains blanks for certain figures, which were filled in with defendant’s calculations of plaintiffs purported final pay, and also contains a blank for the date, which was filled in as “May, 1995.” However, the portion of the document which generally sets forth the terms of an F and I manager’s pay is not dated.
Plaintiff testified at trial that he had never agreed to an alteration of his compensation plan and that he had never seen this document setting out the alleged new terms of his employment until it was produced during discovery after the filing of his suit. We deem it noteworthy that defendant did not offer the testimony of any employee in the position to have actually negotiated the terms of plaintiffs employment with defendant to establish that a new compensation plan was ever negotiated and agreed to by the parties. Moreover, defendant did not offer any evidence to establish that plaintiff had ever even received the document allegedly setting forth the new terms of his compensation.
17Therefore, we conclude that defendant failed to offer competent testimony from any witness or corroborating circumstances sufficient to establish an alteration in plaintiffs compensation plan. See Scallan, 303 So.2d at 501; see also Pennington Construction, Inc., 94-0575 at pp. 5-6; 652 So.2d at 639-640. The trial court erred in finding otherwise.
Inasmuch as defendant failed to carry its burden of proving a modification of plaintiffs compensation plan, plaintiff was entitled to recover compensation as set forth in the April 1, 1995 written agreement between the parties.[3] Considering the written agreement, plaintiffs calculations based on figures obtained from defendant which defendant did not dispute, and the supporting documentation, the record establishes that plaintiff was entitled to additional compensation in the amount of $1,333.79.[4] The trial court erred in failing to grant plaintiff judgment for this amount.
INVOLUNTARY DISMISSAL OF PLAINTIFF’S CLAIMS FOR PENALTIES AND ATTORNEY’S FEES
Plaintiff also avers that the trial court erred in granting defendant’s motion for involuntary dismissal at the close of plaintiffs case on the issues of plaintiffs *983 entitlement to penalty wages and attorney’s fees.[5] We agree.
|sIn an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party may move for a dismissal of the action on the ground that upon the facts and law, the plaintiff has shown no right to relief. LSA-C.C.P. art. 1672(B). The appropriate standard for the trial court’s determination of a motion for involuntary dismissal is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish a claim by a preponderance of the evidence. Politz v. Recreation and Park Commission for Parish of East Baton Rouge, 619 So.2d 1089, 1093 (La.App. 1st Cir.), unit denied, 627 So.2d 653 (La.1993). Proof by a preponderance of the evidence simply means that when taking the evidence as a whole, the fact or cause sought to be proved is more probable than not. Politz, 619 So.2d at 1093. A trial court’s decision to dismiss based on LSA-C.C.P. art. 1672(B) should not be reversed in the absence of manifest or legal error. Tyler v. Our Lady of the Lake Hospital, Inc., 96-1750, p. 4 (La.App. 1st Cir.6/20/97); 696 So.2d 681, 684.
A. Involuntary Dismissal of Claim for Penalty Wages
At the time of plaintiffs resignation, LSA-R.S. 23:631(A) provided that an employer was required to pay the amount then due the employee not later than three days following the date of discharge or resignation. In the event of a dispute as to the amount of wages due, the employer was required to pay the undisputed portion of the amount due within the three day period. LSA-R.S. 23:631(B).
Revised Statute 23:632 further provides, in pertinent part, as follows:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
To prove entitlement to penalty wages under LSA-R.S. 23:632, the employee must prove three things: (1) that wages were due and owing, (2) that | ^demand for payment was made at the place where the employee was usually paid, and (3) that the employer failed to pay upon demand. Pokey v. Five L Investments, Inc., 96-0018, p. 5 (La.App. 1st Cir.9/27/96); 681 So.2d 489, 492.
This statute is penal in nature and, therefore, must be strictly construed. Equitable defenses are available, and penalty wages are not to be absolutely imposed irrespective of the circumstances. Pace v. Parker Drilling Company and Subsidiaries, 382 So.2d 988, 990 (La.App. 1st Cir.), writ denied, 383 So.2d 1016 (La.1980). Generally, when there is a good faith question of whether or not the employer actually owes past due wages or whether there may be an offset to wages owed, resistance to payment will not trigger penalty wages. However, when the employer is arbitrary or sets out procedural pitfalls for the employee or is merely negligent in failing to pay past due wages, penalty wages will be assessed. Pace, 382 So.2d at 991.
Regarding the first criterion, as stated above, plaintiff clearly demonstrated that wages were due and owing. The second and third criteria, that of demand for wages and the employer’s subsequent fail *984 ure to timely pay, were the basis of defendant’s motion and in our view, the trial court’s erroneous grant of involuntary dismissal.
Despite plaintiffs actions on his final day of employment, the phone calls he made to the payroll clerk and his attempt to send a demand letter to Jimmy Gaiennie, defendant argued that it did not receive “demand” for payment of wages as contemplated by the statute, until receipt of the August 15, 1995 demand letter from plaintiffs attorney. Defendant further contended that it then made payment within the statutorily-allowed fifteen day period under LSA-R.S. 23:631(A)(l)(b) as amended effective August 15, 1995. In granting involuntary dismissal, the trial court concluded that plaintiff had failed to establish that defendant refused to comply with the provisions of LSA-R.S. 23:631.
| ^Initially, we note that as discussed in footnote number one supra, the 1995 amendment to LSA-23:631, which gives an employer fifteen days to pay wages due upon the resignation of the employee, did not become effective until after plaintiffs resignation and, thus, does not apply in this case. Hebert v. Insurance Center, Incorporated, 97-298, p. 4 (La.App. 3rd Cir. 1/7/98); 706 So.2d 1007, 1010-1011, writ denied, 98-0353 (La.3/27/98); 716 So.2d 888. Thus, to the extent that it relied upon the amended version of the statute, the trial court committed legal error.
Moreover, regarding the date on which demand was made, we note that plaintiff testified that on his final day of employment, he told his immediate supervisor, Jared Gaiennie, that he wanted final payment of his wages “as quick as [he] could possibly get it.” No evidence was offered or elicited during presentation of plaintiffs case to contradict his testimony on this point. A statutorily sufficient demand for payment does not have to be in writing. Rather, a “fairly precise and certain” oral or written request is sufficient. Lambert v. Usry & Weeks, 94-216, p. 3 (La.App. 5th Cir.9/14/94); 643 So.2d 1280, 1281. Moreover, an employee’s demand for payment need only be made once. Pace, 382 So.2d at 991.
In ruling on a motion for involuntary dismissal, the trial court should accept as true uncontroverted testimony to establish a fact for which it is offered, absent circumstances in the record casting suspicion on the reliability of the testimony and a sound reason for its rejection. Foster v. Tinnea, 97-2718, pp. 4-5 (La.App. 1st Cir.12/29/97); 705 So.2d 782, 784-785. In our view, an oral request for payment “as quick as possible” made to an employee’s immediate supervisor is “fairly precise and certain,” within the meaning of the statute, and the trial court erred in ignoring plaintiffs uncontroverted and straightforward testimony that such demand was made on his final day of employment.
In Furthermore, we find error in the trial court’s acceptance of defendant’s contention that plaintiff is not entitled to penalty wages because he “never set foot on [defendant’s] premises” after his final day of employment to collect his check. It is true that while payment by mail is permitted, an employer is not required to mail an employee his pay check pursuant to LSA-R.S. 23:631. Nonetheless, neither is an employee required to perform a vain and useless act. Delay v. Charbonnet, 617 So.2d 952, 955 n. 1 (La.App. 4th Cir.1993). When he did not receive his check in the mail by June 26,1995, plaintiff again called the payroll clerk, who told plaintiff that no check had been issued to him. Thus, to require plaintiff to go to defendant’s place of business to pick up a check which did not exist would be a vain and useless act, and cannot serve to defeat plaintiffs claim.
Because no payment was made to plaintiff from the time of demand on May 12, 1995, until a check was issued by defendant for the undisputed amount of wages on August 29, 1995, plaintiff clearly established his entitlement to penalty wages by a preponderance of the evidence during his *985 case-in-chief. Accordingly, the trial court erred in granting defendant’s motion for involuntary dismissal on the issue of penalty wages. Thus, this matter must be remanded for completion of trial on this issue. See Politz, 619 So.2d at 1095-1096.
B. Involuntary Dismissal of Claim for Attorney’s Fees
We also conclude that the trial court erred in granting defendant’s motion for involuntary dismissal on the issue of attorney’s fees. Louisiana Revised Statute 23:632 mandates an award of reasonable attorney’s fees in the event that a plaintiff files a “well-founded suit” for unpaid wages. Pokey, 96-0018 at p. 12; 681 So.2d at 496. Thus, the trial court’s dismissal of plaintiffs claim for attorney’s fees prior to its ruling on plaintiffs entitlement to unpaid wages at the conclusion of trial constituted legal error.
1 ^Moreover, the attorney’s fee provision is not subject to any equitable defenses that may be raised by the employer. Hebert, 97-298 at p. 12; 706 So.2d at 1014. Because we have determined that plaintiff is in fact entitled to unpaid wages and because no equitable defenses to an attorney’s fee award are allowed, plaintiff is entitled to an award of attorney’s fees for his attorney’s efforts in recovery of his unpaid wages without the necessity of remand on this issue.
Plaintiffs counsel submitted into evidence a bill detailing services rendered in this matter, requesting attorney’s fees in the amount of $1,883.25. We find that these charges are reasonable and note that no charge was included in this bill for counsel’s participation at trial. Thus, we award plaintiff $2,000.00 in attorney’s fees for work performed through trial of this matter, and we further award an addition; al $1,500.00 in attorney’s fees for work performed on appeal. See Pace, 382 So.2d at 991-992 (a 1980 case in which $1,500.00 award of attorney’s fee at trial was found to be within the trial court’s discretion); see also Hughes v. Cooter Brown’s Tavern, Inc., 591 So.2d 1334, 1388 (La.App. 4th Cir.1991), unit denied, 594 So.2d 1318 (La.1992) (a case where the appellate court awarded an additional $1,500.00 for attorney’s fees incurred for appeal).
On remand, the trial court need only consider plaintiffs entitlement to any further award of attorney’s fees for the additional prosecution of the penalty wage claim to the extent that plaintiff may be successful on that claim. See Pace 382 So.2d at 991.
CONCLUSION
For the above and foregoing reasons, the October 2, 1997 judgment of the trial court is reversed in its entirety. Judgment is hereby rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Michael D. Kern, and against defendant, River City Ford, Inc., in the amount of $1,333.79, representing unpaid wages.
|1BIT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant pay all costs in this matter, including $3,500.00 in attorney’s fees.
This matter is remanded for completion of trial on the issues of penalty wages and plaintiffs entitlement to any further award for attorney’s fees for prosecution of the penalty wage claim on remand.
REVERSED; RENDERED IN PART; AND REMANDED WITH INSTRUCTIONS.
SHORTESS, J., concurs with reasons.

. Revised Stated 23:631 was amended by Acts 1995, No. 325, sec. 1 and by Acts 1997, No. 56, sec. 1. The 1995 amendment divided paragraph A into subparagraphs (A)(1)(a) (discussing the employer’s duty to pay the employee the amount then due within three days of the discharge of the employee), (A)(1)(b) (discussing the employer's duty to pay the employee the amount then due within fifteen days of the resignation of the employee), (A)(2) (discussing the place and manner of payment), and (A)(3) (discussing non-applicability of the subsection when there is a collective bargaining agreement). Pokey v. Five L Investments, Inc., 96-0018, p. 4 n. 3 (La.App. 1st Cir.9/27/96); 681 So.2d 489, 491 n. 3. However, this amendment did not become effective until August 15, 1995, after plaintiff’s resignation. Because it was a substantive amendment, the amendment is not applicable herein. See Hebert v. Insurance Center, Incorporated, 97-298, p. 4 (La.App. 3rd Cir. 1/7/98); 706 So.2d 1007, 1010-1011, writ denied, 98-0353 (La.3/27/98); 716 So.2d 888.

. While the amount of the draw under the purported new compensation plan remained the same, the actual amount of the draw checks did differ slightly. It is unclear whether this difference, which was unexplained by either party, was the result of taxes being withheld from these checks. It appears that some amount was withheld from these checks, because they also differ from the gross amount which both parties concede that plaintiff was paid in draws for the month of May.

. We note that at the very least, plaintiff was entitled to additional compensation for salary and commissions earned on May 12, 1995. It is clear from the record that plaintiff worked a full day on May 12, but that defendant only paid him what it contended he was owed through May 11, 1995.

.This amount was arrived at as follows:
$ $2,000.00 base salary x 12 days = $ 774.19 worked/31 days in month
29 warranties sold x $10.00 = 290.00
Net F and I ($50,270) x 0.05 = 2,513.50
Total pay for May 1995 $3,577.69
Less payments made - 2.243.90
Compensation still owed $1,333.79

. Defendant moved for involuntary dismissal which was granted on the issues of "penalties, attorney’s fees and damages.” It is unclear what is meant by “damages,” but it is clear that plaintiffs claim for additional unpaid wages was not dismissed by a grant of involuntary dismissal. Rather, the issue of entitlement to additional wages was fully litigated and was ruled upon by the trial court at the end of trial on the merits.